**VALENTINE–RADFORD, INC.,
et al., Respondents,**

v.

**AMERICAN MOTORISTS
INSURANCE COMPANY,
Appellant.**

No. WD 54373.

Missouri Court of Appeals,
Western District.

Feb. 16, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1999.

Application to Transfer Denied
June 1, 1999.

48

Ward K. Brown, Kansas City, for Respondents.

James P. Barton, Jr., Kansas City, for Appellant.

Before: ULRICH, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

American Motorists Insurance Company (American) appeals the judgment of the circuit court in favor of the respondents, Valentine–Radford, Inc. (Valentine) and Mark Spence, in the amount of $390,034 on their claims in Counts I, VIII, and IX of their first amended petition for breach of contract; vexatious refusal to pay (§ 375.420 [1]); and declaratory judgment,[2] respectively. These claims were based on American's failure to defend, under a policy of liability insurance issued by American to Valentine, a lawsuit filed against them by Scott Roebuck in which the respondents prevailed.

American raises four points on appeal. In its first point, it claims that the trial court erred in entering partial summary

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. In the declaratory judgment count, the respondents sought a declaration that American had a continuing duty to defend the underlying lawsuit, specifically its appeal. Hence, this count was contingent on the court finding, as to one of the other counts, a duty to defend a claim in the underlying lawsuit.

judgment in favor of the respondents on the issue of liability on their claim for breach of contract because the respondents were not entitled to judgment as a matter of law in that, on the undisputed facts, there was no breach of contract since the policy of insurance did not provide coverage for Roebuck's claims of conversion and negligence in the underlying lawsuit, requiring American to defend. In its second point, it claims that, even if the respondents were entitled to partial summary judgment on the issue of liability on their breach of contract claim, the trial court erred in awarding Valentine damages of $250,150 for attorney's fees and expenses incurred in defending the Roebuck lawsuit because, on the record, this amount was not reasonable and customary. In its third and fourth points, American makes the same claims that it makes in Points I and II, except with respect to the respondents' claim for vexatious refusal to pay.

Because we find that there was no coverage under the policy of liability insurance for either Roebuck's conversion or negligence claims against the respondents requiring American to defend in the underlying lawsuit, we reverse and remand.

## Facts

The instant case arises out of a lawsuit filed on October 12, 1994, in the Circuit Court of Jackson County against the respondents by Scott Roebuck, a former employee of Valentine. After Roebuck's employment was terminated, he filed suit against Valentine and Spence, his immediate supervisor at Valentine, alleging that he had not been paid for overtime work performed and that Valentine had failed to return to him certain personal computer-related materials. In his petition, Roebuck made claims for breach of contract, a violation of § 290.110, fraud, conversion, and unjust enrichment. On June 13, 1995, Roebuck filed an amended petition which added a negligence count and a claim for punitive damages. The instant appeal involves only Roebuck's claims for conversion and negligence in which he alleged that he was the creator and owner of certain personal documents and programs located on the computer which he used in connection with his work for Valentine. He claimed that Valentine, contrary to its agreement, failed to return and/or destroyed these materials, causing him economic loss.

After being served, Valentine notified American of the Roebuck lawsuit on March 17, 1995, and asserted that at least one of the claims alleged was covered under a commercial general liability insurance policy (the policy) issued to it by American and that, as a result, it was obligated under the policy to defend the Roebuck lawsuit. American reviewed both Roebuck's original petition and his first amended petition and determined that Roebuck's alleged damages were not the result of an "occurrence" as defined in the policy and that certain policy exclusions applied to deny coverage. As a result, American determined that because there was no coverage under the policy for the claims made against the respondents, it did not have a duty to defend them in the lawsuit. Thus, on June 28, 1995, American notified the respondents by letter that it was denying coverage under the policy and would not provide a defense in the Roebuck lawsuit.

Valentine and Spence successfully defended Roebuck's lawsuit, prevailing on all claims. The judgment was affirmed by this court in *Roebuck v. Valentine–Radford, Inc.*, 956 S.W.2d 329 (Mo.App.1997). On December 27, 1995, Valentine filed its petition against American in the Circuit Court of Jackson County for breach of contract and declaratory judgment. Thereafter, it filed a first amended petition seeking damages for: Count I, breach of insurance policy; Count II, breach of agreement to defend; Count III, fraudulent representation; Count IV, fraudulent non-disclosure; Count V, promissory estoppel; Count VI, equitable subrogation

and restitution; Count VII, vexatious refusal to pay pursuant to § 375.296; and Count VIII, vexatious refusal to pay pursuant to § 375.420. Valentine also sought in Count IX a declaratory judgment that American had a continuing obligation to defend and indemnify it with regard to the Roebuck lawsuit.

Valentine filed a motion for partial summary judgment with respect to Counts I, VIII, and IX that: (1) American was liable to Valentine for the cost of defending the Roebuck lawsuit; (2) American's refusal to defend the Roebuck lawsuit was vexatious as a matter of law pursuant to § 375.420; and (3) American was obligated to defend Valentine during the appeal of the Roebuck lawsuit. A hearing was held on this motion on February 24, 1997. On March 6, 1997, the trial court sustained Valentine's motion and entered partial summary judgment in favor of Valentine on the issue of liability as to its breach of contract and vexatious refusal to pay claims and its request for a declaratory judgment. The parties then agreed to dismiss without prejudice Counts II, III, IV, V, VI, VII, and Count IX to the extent that it was not resolved by the partial summary judgment.

In order to determine the respondents' damages on their breach of contract and vexatious refusal to pay claims, the trial court ordered them to file proof of the attorney's fees and expenses incurred in the Roebuck lawsuit and the present action. The respondents sought $250,150 for attorney's fees, expenses and interest as to Count I and $139,884 for attorney's fees, expenses and additional damages pursuant to § 375.420 as to Count VIII. A hearing on the issue of damages was held on April 30, 1997, at which both parties presented evidence as to the amount and reasonableness of the attorney's fees incurred by Valentine in defending the Roebuck lawsuit. On May 8, 1997, the trial court entered its order that Valentine recover $230,812 in attorney's fees and expenses plus $19,338 in interest as to the breach of

contract claim, and $116,653 in attorney's fees and expenses and additional damages, pursuant to § 375.420, in the amount of $23,231 as to the vexatious refusal to pay claim and that Spence recover nothing.

This appeal follows.

## I.

In its first point, American claims that the trial court erred in entering partial summary judgment in favor of the respondents on the issue of liability on their claim for breach of contract because the respondents were not entitled to judgment as a matter of law in that, on the undisputed facts, there was no breach of contract since the policy of liability insurance did not provide coverage for Roebuck's claims of conversion and negligence in the underlying lawsuit, requiring American to defend. Specifically, American contends that it did not have a duty to defend the respondents in the Roebuck lawsuit because his alleged injuries were not caused by a covered "occurrence," as defined in and required by the policy. In the alternative, American contends that Roebuck's claims in the underlying lawsuit were excluded from coverage by the "intentional act" and "care, custody, and control" policy exclusions.

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on

the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

To be entitled to partial summary judgment, under Rule 74.04, on the issue of liability on their breach of contract claim, the respondents were required to establish that (1) there was no genuine dispute as to the material facts on which they relied to recover and had the burden of persuasion at trial, and (2) on these undisputed facts, they were entitled to judgment as a matter of law. Rule 74.04; *ITT,* 854 S.W.2d at 381. To make a *prima facie* case for summary judgment, claimants, such as the respondents here, must establish each and every proof element of their claim with undisputed evidence. *ITT,* 854 S.W.2d at 381. Once a movant has made a *prima facie* case for summary judgment, the burden then shifts to the non-movant to show that the movant was not entitled to summary judgment. *Id.* at 381. If the burden shifts, the non-movant must then "show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed," or that under the undisputed facts, the respondents were not entitled to judgment as a matter of law. *Id.* Here, there is no dispute as to the underlying facts. Rather, American claims that on the undisputed facts the respondents were not entitled to judgment as a matter of law because it did not have a duty to defend the respondents in the underlying lawsuit because Roebuck's conversion and negligence claims were not covered under the policy. We agree.

■ To be entitled to partial summary judgment on the issue of liability on their breach of contract claim for a failure to defend, the respondents had to establish, *inter alia,* with undisputed facts that the conversion or negligence claims of Roebuck were arguably covered under the policy, *Millers Mut. Ins. Ass'n v. Shell Oil Co.,* 959 S.W.2d 864, 869 (Mo.App.1997), requiring American to defend in the underlying lawsuit, which it failed to do. To establish coverage under the policy for Roebuck's claims, the respondents had to show: (1) issuance and delivery of the policy; (2) payment of the premium; (3) a loss caused by a peril insured against; and (4) notice and proof of loss to the insurer. *Kauble v. MFA Mut. Ins. Co.,* 637 S.W.2d 831, 832–33 (Mo.App.1982). The only dispute here is in regard to the third element of whether the loss was caused by a peril insured against.

· ■ An insurer's duty to defend under an insurance policy is broader than its duty to indemnify. *Millers,* 959 S.W.2d at 869. The duty to defend is determined by comparing the language of the policy with the allegations of the petition in the action against the insured. *Standard Artificial Limb, Inc. v. Allianz Ins. Co.,* 895 S.W.2d 205, 210 (Mo.App.1995). An insurer has a duty to defend if the plaintiff's allegations state a claim which is potentially or arguably within the policy's coverage. *Millers,* 959 S.W.2d at 869. In addition to the plaintiff's allegations, facts known to the insurer or ascertainable through reasonable investigation can also create a duty to defend. *Allianz,* 895 S.W.2d at 210. There is a duty to defend allegations within the policy's coverage even if the insurer may not ultimately be obligated to indemnify the insured. *Millers,* 959 S.W.2d at 871. The burden ·is on the insured to prove that there was coverage under the policy. *State Farm Fire & Cas. Co. v. D.T.S.,* 867 S.W.2d 642, 644 (Mo.App.1993). However, the insurer has the burden to prove that an exclusion applies. *Id.*

The respondents alleged in their petition for breach of contract that American breached its duty under the policy to defend them in the Roebuck lawsuit because both his conversion and negligence claims arose from a covered "occurrence" as defined in the policy. With respect to an occurrence, the policy contained the following "Insuring Agreement":

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages . . .

. . .

This insurance applies to "bodily injury" and "property damage" only if:

1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

2) The "bodily injury" or "property damage" occurs during the policy period.

If, in fact, Roebuck's claims resulted from a covered "occurrence," under either his conversion or negligence theory, then, assuming no policy exclusion applied, American had a duty to defend the respondents as to all of the claims made by him. *Butters v. City of Independence*, 513 S.W.2d 418, 424–25 (Mo.1974).

As to a covered "occurrence," Roebuck alleged, as to both his conversion and negligence claims, that Valentine had provided him with a laptop computer to use in connection with his employment which contained the original copies of certain personal documents, letters and programs of which he was the author, creator and owner. He further alleged that he was asked to return the computer upon the termination of his employment with Valentine and that he did so pursuant to an agreement that his personal materials would be returned to him. He alleged that the respondents breached this agreement by failing to return and/or destroying these materials, causing him to suffer an economic loss. As to his conversion claim, Roebuck alleged that Valentine and Spence acted intentionally, willfully, maliciously and with reckless and conscious disregard for his rights in failing and refusing to return to him his personal materials which were on the computer. As to his negligence claim, he alleged that he entrusted the computer to Spence and others for the purpose of removing his personal materials from it and that the respondents had a duty to exercise care in extracting the materials from the computer and in returning his materials to him, but breached this duty by destroying, damaging and failing to return to him his personal materials and by failing to provide or use a qualified person to remove his materials from the computer.

As to Roebuck's conversion claim, American contends that it was not covered under the policy because the damage alleged was not the result of an "occurrence," as required for coverage and which is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under this definition, American argues that there would be no coverage in that conversion is an intentional tort which, as a matter of law, could not be committed by accident. American also argues that the conversion claim was excluded from coverage under the intentional act exclusion of the policy, which excluded coverage for property damage "expected or intended from the standpoint of the insured." As to the negligence claim, American concedes that it resulted from a covered "occurrence." However, it argues that this was excluded from coverage under the "care, custody or control" exclusion of the policy, which excludes coverage for damage to "personal property in the care, custody or control of the insured." In this respect, American argues that the exclusion applies because Roebuck's alleged damages occurred while Jeff Huggins, an employee of Valentine, who was

an insured under the policy, had the computer in his possession.

In response to the arguments of American, the respondents correctly assert that the proper inquiry in determining whether American had a duty to defend the respondents in the underlying lawsuit is whether either of Roebuck's claims was potentially or arguably covered under the policy. *Millers,* 959 S.W.2d at 869. As to their conversion claim, the respondents contend that when dealing with an allegation that an insured acted intentionally in causing an injury, the proper inquiry is not whether the insured intended the act, but whether it intended the harm that occurred. In this respect, they argue that they did not intend to deprive Roebuck of his personal materials located on the computer. As such, they claim that Roebuck's damages were the result of an accident and covered "occurrence" and that the intentional act exclusion, therefore, did not apply.

As to the negligence claim, the respondents initially contend that American did not plead the "care, custody or control" exclusion as an affirmative defense in its answer. Consequently, they argue that American cannot raise it for the first time on appeal. Although a review of the record does reveal that American did not plead the exclusion in its answer to the respondents' first amended petition, American did rely on the exclusion in initially denying coverage to the respondents and did raise it in its response to the respondents' motion for partial summary judgment. A review of the transcript of the hearing on the respondents' summary judgment motion also reveals that the exclusion was discussed and debated with no objection from the respondents. "Failure to timely and specifically object to evi-

dence beyond the scope of the pleadings constitutes implied consent for determination of the issues raised." *Conduff v. Stone,* 968 S.W.2d 200, 205 (Mo.App.1998). As such, the respondents' contention that the exclusion was raised for the first time on appeal and cannot be considered by this court is without merit.

With respect to the applicability of the "care, custody or control" exclusion, the respondents argue that Roebuck did not entrust the computer to Valentine or Spence, but instead gave it to Huggins, an employee of Valentine. Thus, they argue that the exclusion did not apply to deny them coverage because the exclusion used the phrase "the insured" which, when read in conjunction with the policy's severability clause, operated to exclude from coverage only Huggins, the person actually holding the property at the time it was allegedly damaged. As such, because Roebuck alleged that Valentine or Spence, and not Huggins, had custody of the computer at the time of the alleged harm, the respondents argue that the exclusion did not apply to exclude coverage under the policy for the negligence of Valentine or Spence. The respondents further argue that if American had intended to extend the exclusion to all insureds under the policy when only one insured holds the property, it should have used the phrase "any insured" or "an insured." [3]

It is unnecessary for us to determine whether Roebuck's claims resulted from a covered "occurrence" or whether the "intentional act" exclusion operated to exclude coverage for the conversion claim, as we find that coverage for both the conversion and negligence claims was ex-

---

**3.** As to "insureds," the policy provides:

**Section II—Who is an Insured**

    1. If you are designated in the Declaration as . . .

        c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their

duties as officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    2. Each of the following is also an insured:

        a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

cluded by the "care, custody or control" exclusion. The exclusion provides that:

This insurance does not apply to: ...

    j. "Property damage" to: ...

        4) Personal property in the care, custody or control of the insured.

In interpreting the policy to determine the applicability of this exclusion, we are required to ascertain the intent of the parties and to give effect to that intent. *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. *banc* 1995). In interpreting an insurance contract, we must use the plain, ordinary, and usual meaning of the terms used in the policy. *Preferred Physicians Mut. Management Group, Inc. v. Preferred Physicians Mut. Risk Retention Group, Inc.,* 961 S.W.2d 100, 103 (Mo.App. 1998). Giving the policy language at issue here its plain and ordinary meaning, we find that it is unambiguous and clearly excludes coverage for the damage done, intentionally or negligently, to Roebuck's personal materials located on the computer while it was in the possession of Valentine or any of its employees. And, where an insurance policy is unambiguous, we will enforce it as written. *American Motorists Ins. Co. v. Moore,* 970 S.W.2d 876, 878 (Mo.App.1998). Although our appellate courts have recognized previously that an exclusionary clause using the phrase "the insured" may be rendered ambiguous when accompanied by a severability clause, such as the one in the policy here, providing that "this insurance applies: a. As if each Named Insured were the only Named Insured; and b. Separately to each insured against whom claim is made or 'suit' brought," *see Shelter Mut. Ins. Co. v. Brooks,* 693 S.W.2d 810 (Mo. *banc* 1985); *American Family Mut. Ins. Co. v. Moore,* 912 S.W.2d 531 (Mo.App.1995), we believe these cases are inapposite to the case at bar.

Both *Shelter* and *American Family* involved insurance policies issued to named insureds who were not corporate entities. Valentine–Radford, Inc., is a Missouri corporation. It is well-settled that a corporation is an artificial entity that can act only through its agents and employees. *See Fowler v. Park Corp.,* 673 S.W.2d 749, 754 (Mo. *banc* 1984); *Standard of Beaverdale, Inc. v. Hemphill,* 746 S.W.2d 662, 663 (Mo.App.1988). As such, when property is in the possession of an employee of the corporate named insured, it is also in the possession of that corporate named insured. Thus, when the named insured on a policy of insurance is a corporation, we find that the phrase "the insured" must be read to include not only the named corporate insured, but all of its employees as well. As such, the "care, custody or control" exclusion at issue here would have excluded from coverage damage to property in the possession of Valentine and any of its employees. Hence, because neither Roebuck's conversion nor negligence claims were covered or arguably covered under the policy, American did not have a duty to defend the respondents in the underlying lawsuit. *Millers,* 959 S.W.2d at 869. And, because, under the undisputed facts, there was no duty to defend, the trial court erred in entering partial summary judgment for the respondents on the issue of liability on their claim for breach of the insurance contract.

Given our disposition of American's Point I, we need not address its remaining points in that, having found that American had no duty under the policy to defend the respondents in the Roebuck lawsuit, the respondents would not only not be entitled to judgment for breach of contract, but would not be entitled to judgment for vexatious refusal to pay. *See McDonough v. Liberty Mut. Ins. Co.,* 921 S.W.2d 90, 95 (Mo.App.1996) (holding that a claim against an insurer for vexatious refusal to pay cannot be maintained where the court finds that the insurer has no duty to defend under the policy).

## Conclusion

The judgment of the circuit court in favor of the respondents is reversed. And, because there is no underlying factual dis-

pute, the cause is remanded to the circuit court with orders to enter judgment for American in accordance with this opinion.

All concur.