**PHILADELPHIA INDEMNITY INSURANCE COMPANY, Plaintiff,**

v.

**KANSAS CITY HOME CARE, INC., et al., Defendants.**

**No. 00–2391–JWL.**

United States District Court, D. Kansas.

April 11, 2001.

---

Robert P. Numrich, Todd M. Johnson, Evans & Dixon, L.L.C., Robert R. Barton, The Nygaard Law Firm, Kansas City, MO, for Plaintiff.

Robert R. McQuain, McQuain, Block, DeHardt & Rosenbloom, P.C., Kansas City, MO, Michael R. Taylor, The Law Firm, P.C., Independence, MO, Bernard F. Weinand, Blackwood & Langworthy, L.C., Kansas City, MO, Phillip C. Rouse, Randall L. Rhodes, Jennifer L. Benedict, Douthit, Frets, Rouse & Gentile, L.L.C., Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This case comes before the court on the plaintiff's motion for summary judgment (Doc. 13), the plaintiff's motion for leave to file an amended complaint (Doc. 15) and defendant Lynda Moore's motion for partial summary judgment (Doc. 43). For the reasons set out below, the plaintiff's summary judgment motion is granted, thus mooting its motion to amend, and the defendant's motion for partial summary judgment is denied.

### ● Undisputed Facts

Philadelphia Indemnity Insurance Company ("Philadelphia Insurance") entered into an insurance contract with Kansas City Home Care, Inc. ("KCHC") and Kansas City Home and Health Services, Inc. ("KCHHS") effective October 30, 1997 to October 30, 1998. The contract provides coverage in two parts, the Commercial General Liability ("CGL") section and the Social Service Organization Professional Liability ("SSOPL") section. The CGL section provides coverage for "bodily injury," "property damage," "personal injury" and "advertising injury" if caused by an "occurrence." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The SSOPL section provides coverage for "damages" resulting from a "professional incident." A "professional incident" is defined as "any actual or alleged negligent" act, error or omission "in the actual rendering of professional services to others, including counseling services, in your capacity as a social service organization." According to the contract, "[p]rofessional

services include[ ] the furnishing of food, beverages, medications or appliances in connection therewith." Both sections cover employees, "but only for acts within the scope of their employment" or while "performing duties related to the conduct" of the insured's business.

On December 13, 1999, Mark Toliver, Katherine Bruni and Christian Toliver (the "Toliver children") filed a counterclaim in a lawsuit before Judge VanBebber of this court.[1] The counterclaim defendants include KCHC, KCHHS and Lynda Moore. The counterclaim alleges that in February of 1998, the Toliver children contracted with KCHC and KCHHS for nursing, home health and personal services for Mariza Toliver at her home in Johnson County, Kansas. According to the counterclaim, KCHHS assigned an employee, Lynda Moore, to provide the contracted services to Mariza Toliver. The counterclaim alleges that Ms. Moore conspired with two other care givers to obtain an interest in the jewelry of Mariza Toliver and in a trust created by Mariza Toliver (the "Toliver Trust"). Ms. Moore allegedly used "improper or wrongful means" to influence Mariza Toliver, who suffered from "mental and physical impairments," to name Ms. Moore and another care giver as beneficiaries of Ms. Toliver's estate and the Toliver Trust. Mariza Toliver died on April 15, 1998, after executing a new will and trust documents naming Ms. Moore and another care giver as beneficiaries in place of the Toliver children. The counterclaim lists numerous causes of action, including breach of contract, fraud, conspiracy, violation of the Kansas Consumer Protection Act, and negligent hiring and supervision.

KCHC, KCHHS and Ms. Moore demanded that Philadelphia Insurance pro-

---

**1.** By order of Judge VanBebber on December 15, 2000, the case was remanded to the district court of Johnson County, Kansas.

vide a defense and indemnity against the counterclaim. Philadelphia Insurance refused to defend or indemnify Ms. Moore and is defending KCHC and KCHHS under a reservation of rights. Philadelphia Insurance brought this lawsuit seeking declaratory judgment that it owes no duty to defend or to indemnify KCHC, KCHHS or Ms. Moore. Ms. Moore filed a counterclaim for declaratory judgment and damages for breach of the insurance contract. Philadelphia Insurance has moved for summary judgment and Ms. Moore has moved for partial summary judgment.

● Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties' papers do not identify any material questions of fact to be resolved. The only question presented by the summary judgment motions is the meaning of the insurance contract.

■ A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Kansas, the construction of a contract is governed by the law of the state in which the contract was made. *Simms v. Metropolitan Life Ins. Co.*, 9 Kan.App.2d 640, 642, 685 P.2d 321 (1984). KCHC, KCHHS and Philadelphia Insurance agree that the insurance contract in issue was made in Missouri.

Under Missouri law, the interpretation of a contract is a matter of law. *Caldwell v. Heritage House Realty, Inc.*, 32 S.W.3d 773, 775 (Mo.Ct.App.2000). Courts must interpret an insurance contract by its plain

meaning. *Marchand v. Safeco Ins. Co. of America*, 2 S.W.3d 826, 829 (Mo.Ct.App. 1999) "We cannot distort unambiguous language to create an ambiguity." *American Motorists Ins. Co. v. Moore*, 970 S.W.2d 876, 878 (Mo.Ct.App.1998).

■ "An insurer's duty to defend under an insurance policy is broader than its duty to indemnify." *Valentine–Radford, Inc. v. American Motorists Ins. Co.*, 990 S.W.2d 47, 51 (Mo.Ct.App.1999). The duty to defend arises when a complaint alleges facts that give rise to a claim potentially within the contract's coverage. *Auto Club Family Ins. Co. v. Jacobsen*, 19 S.W.3d 178, 183 (Mo.Ct.App.2000). The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. *Id.* "In addition to the plaintiff's allegations, facts known to the insurer or ascertainable through reasonable investigation can also create a duty to defend." *Valentine–Radford*, 990 S.W.2d at 51.

■ The insured carries the burden of proving that there is coverage under the insurance contract. *Id.* The insurer, however, carries the burden of proving that an exclusion applies. *Id.*

● Discussion

Philadelphia Insurance argues in its motion for summary judgment that neither the CGL nor the SSOPL sections of the insurance contract provide coverage for the allegations made in the counterclaim. KCHC and KCHHS filed a joint response to Philadelphia Insurance's motion for summary judgment and Ms. Moore filed a separate response. KCHC, KCHHS and Ms. Moore apparently concede that the CGL section does not provide coverage, but argue that the SSOPL section provides coverage.[2] Whether Philadelphia Insur-

---

2. The parties' briefs do not respond to Philadelphia Insurance's arguments that the CGL

section does not cover the allegations in the counterclaim.

ance owes a duty to defend or indemnify KCHC and KCHHS is a different question than whether it owes a duty to defend or indemnify Ms. Moore, an employee of KCHC. The court, therefore, will consider each question in turn.

● KCHC and KCHHS

KCHC and KCHHS argue that the SSOPL section provides coverage because the counterclaim alleges negligent hiring and supervision. According to KCHC and KCHHS, negligent hiring and supervision fits the definition of a "professional incident." The definition of a "professional incident" is a negligent act, error, or omission "in the actual rendering of professional services to others...." The court doubts that negligence in hiring and supervision falls within coverage for negligent acts in "the actual rendering of professional services to others." Philadelphia Insurance, however, does not make this argument. Instead, Philadelphia Insurance points to an exclusion in the contract specifying that the contract does not cover damages "arising out of acts, errors or omissions of a managerial or administrative nature." According to Philadelphia Insurance, acts of a "managerial nature" include the hiring and supervision of employees. For support, Philadelphia Insurance cites Webster's Ninth Collegiate Dictionary defining the term "manage" as "to exercise executive, administrative, and supervisory direction of...." KCHC and KCHHS respond by arguing that the meaning of "managerial" is ambiguous because it is not defined in the contract and, therefore, should be construed against Philadelphia Insurance, the drafter of the contract.

■ "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." *Eisenberg v. Redd,* 2001 WL 118562, *2 (Mo. Feb. 13, 2001). "An ambiguity arises in the context of an insurance policy when there is duplicity, indistinctness, or uncertainty as to the meaning of a particular word in the policy." *Schoettger v. American Nat'l Property & Casualty Co.,* 10 S.W.3d 566, 569 (Mo.Ct.App.2000). Terms in an insurance contract are interpreted by their ordinary meaning. *Martin v. United States Fidelity & Guaranty Co.,* 996 S.W.2d 506, 508 (Mo.1999). To determine the ordinary meaning of a term in an insurance contract, the Missouri Supreme Court "consults standard English language dictionaries." *Id.* If there is no ambiguity, the court need not resort to construction of the contract, but rather the intent of the parties is determined from the four corners of the contract. *Id.* "To ascertain the intent of the parties to an unambiguous contract, we give the language used its natural, ordinary, and common sense meaning, and consider the entire contract, along with its object, nature and purpose." *Robbins,* 27 S.W.3d at 496.

■ The absence of a definition of "managerial" in the contract does not, by itself, create ambiguity. *See Burns v. Plaza West Associates,* 979 S.W.2d 540 (Mo. Ct.App.1998) (holding that the definition of "operating deficits" is not ambiguous despite the absence of a definition of the phrase in the contract). The ordinary, common sense meaning of acts "of a managerial or administrative nature" includes the hiring and supervision of employees. Standard English dictionaries, including the one cited by Philadelphia Insurance, define "manage" to include supervision. "An allegedly ambiguous phrase is not considered in isolation, but by reading the policy as a whole with reference to the isolated words." *Citizens Insurance Co. of America v. Leiendecke,* 962 S.W.2d 446, 451 (Mo.Ct.App.1998); *Smith v. Taylor–Morley,* 929 S.W.2d 918, 921 (Mo.Ct.App. 1996) ("To determine whether a contract is

ambiguous, this Court considers the whole document and, absent any definition within the contract, gives contract terms their natural and ordinary meaning."). The insurance contract provides coverage for the liability of a social service organization "in the actual rendering of professional services to others." The 21 exclusions listed in the contract specifically exclude all aspects of a social service organization's business beyond the actual rendering of professional services to clients. A reading of the "entire contract" considering "its object, nature and purpose" makes it clear that the exclusion of acts of a "managerial or administrative nature" is intended to exclude negligence in hiring and supervising employees. For all of these reasons, the court holds that the exclusion is not ambiguous and that the allegation of negligent hiring and supervision falls within the parameters of the exclusion. Philadelphia Insurance, therefore, is not obligated to defend or indemnify KCHC or KCHHS against the allegation.

■ KCHC and KCHHS also argue that the SSOPL section provides coverage because the counterclaim alleges that KCHC breached a fiduciary duty to Mark Toliver and Katherine Bruni. As evidence that the breach of fiduciary duty claim alleges a "professional incident," KCHC and KCHHS point to a demand letter addressed to KCHC from counsel for the counterclaim plaintiffs:

> My clients contend that certain persons have used improper and tortious means to have themselves and others substituted for Mark Toliver and Katherine Bruni in Mariza Toliver's will and trust documents as the beneficiaries of the Toliver estate. My clients contend that one or more representatives of Kansas City Home Care, including Lynda Moore, may have improperly induced and unduly influenced Mariza Toliver with respect to the disposition of her

estate. My clients contend that Kansas City Home Care breached its position of trust and confidence and otherwise breached its duties by causing, assisting in causing, or permitting, changes to certain legal instruments regarding the Toliver estate to the detriment of Mark Toliver and Katherine Bruni.

According to KCHC and KCHHS, "the phrases 'assisting in causing and permitting' arguably fall under the 'professional incident' definition." KCHC and KCHHS suggest that the letter was discoverable by Philadelphia Insurance and point out that the duty to defend extends to facts known or ascertainable through reasonable investigation.

KCHC and KCHHS do not allege that the letter was provided to Philadelphia Insurance and offer no explanation why Philadelphia Insurance should have discovered the letter by reasonable investigation. The fact that the letter exists is not evidence that Philadelphia Insurance should have discovered it. In addition, the letter explains a legal theory as opposed to disclosing new facts that could create a duty to defend. It does not allege that a fiduciary duty was breached by a negligent act, error or omission in the actual rendering of professional services to others. Instead, the letter suggests that Ms. Moore intentionally and improperly influenced Ms. Toliver to change the beneficiaries of her will and the Toliver Trust. Neither the counterclaim nor the letter indicate that the breach of fiduciary duty claim is based on negligence in rendering of professional services to others. For all of these reasons, Philadelphia Insurance owes no duty to defend or indemnify KCHC or KCHHS for the breach of fiduciary duty claim.

Because KCHC and KCHHS have not met their burden of proving that there is coverage under the insurance contract,

Philadelphia Insurance is under no obligation to defend or indemnify KCHC or KCHHS against the allegations in the counterclaim.

● Lynda Moore

Ms. Moore argues that Philadelphia Insurance is required to defend and indemnify the claims against her pursuant to the insurance contract. Philadelphia Insurance contends that Ms. Moore is not insured because the contract provides that employees are only covered "for acts within the scope of their employment" or "while performing duties related to the conduct" of KCHC or KCHHS. Ms. Moore responds by arguing that her "only contact with Mariza Toliver was in the course and scope of her duties as an employee of KCHC."[3] Ms. Moore was assigned by KCHC to provide in-home health nursing care and other personal services for Mrs. Toliver. While Ms. Moore may have been "at work" when she allegedly influenced Ms. Toliver to change the beneficiaries of her will and the Toliver Trust, such conduct was not within the scope of Ms. Moore's employment. "An act is committed within 'the scope and course of employment' if it is done by virtue of the employment and in furtherance of the business or interest of the employer, regardless of the time or motive of the conduct." *H.R.B. & B.B. v. J.L.G.*, 913 S.W.2d 92, 96 (Mo.Ct.App.1995). The alleged acts of Ms. Moore were not done in furtherance of the business interests of KCHC and do not fit the description of the services KCHC was hired to provide. Ms. Moore, therefore, is not covered under the insurance contract and Philadelphia Insurance is not obligated to defend or indemnify Ms. Moore.

● The Toliver children

The Toliver children filed a separate response to the plaintiff's motion for summary judgment. They argue that summary judgment is premature because discovery remains open in the underlying litigation and it is still possible that the complaint in the underlying litigation will be amended to include claims that are covered under the insurance contract. Federal Rule of Civil Procedure 56(f) provides that summary judgement should be refused when the opposing party " 'has not had the opportunity to discover information essential to his opposition.' " *Price v. Western Resources,* 232 F.3d 779, 783 (10th Cir.2000). The Toliver children's argument is slightly different. The Toliver children are the counterclaim plaintiffs in the underlying litigation. They argue that discovery in the underlying litigation may reveal negligence in the actual administration of professional services, thereby allowing them to amend the counterclaim in the underlying litigation to state a claim that is covered by the insurance contract.

The Toliver children's argument is a variation of a Rule 56(f) request for continuance and the limits placed on such continuances seem applicable to their argument. Rule 56(f) requires that the party opposing summary judgment "demonstrate precisely how additional discovery will lead to a genuine issue of material fact." *Ben Ezra, Weinstein, & Co., Inc. v. America Online Inc.,* 206 F.3d 980, 987 (10th Cir.2000). The Toliver children offer no reason for this court to believe that they might discover facts in the underlying litigation that create a duty to defend. Summary judgment should not be delayed merely because it is possible that new evidence will emerge in the underlying litigation. Rule

---

**3.** Ms. Moore does not argue that the alleged acts were committed "while performing duties related to the conduct" of KCHC.

56(f) does not permit a continuance if the parties have had a reasonable opportunity to conduct discovery. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2741 at 443 (3d ed.1998). The complaint in the underlying lawsuit was filed in Johnson County, Kansas on October 22, 1999, giving the parties more than one year to conduct discovery. The facts alleged in the counterclaim set out a detailed picture of events forming the basis for the claims. The Toliver children have provided no reason for the court to believe that additional discovery in the underlying litigation will reveal facts that make summary judgment inappropriate. Relief under Rule 56(f) is not available for the Toliver children and, for the same reasons, relief should not be granted simply because the discovery deadline in the underlying litigation has not yet passed.

**IT IS THEREFORE ORDERED BY THE COURT** that the plaintiff's motion for summary judgment (Doc. 13) is granted and the court declares that the plaintiff has no obligation to defend or indemnify Kansas City Home Care, Inc., Kansas City Home and Health Services, Inc. or Lynda Moore in the underlying lawsuit.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file an amended complaint (Doc. 15) is denied as moot and defendant Lynda Moore's motion for partial summary judgment (Doc. 43) is denied.