MAHER BROTHERS, INC., Appellant,

v.

QUINN PORK, LLC, Defendant,

and

State Farm Insurance Company, Respondent.

ED104184

Missouri Court of Appeals, Eastern District, DIVISION THREE.

Filed: March 7, 2017

John Michael Hark, Hannibal, MO, for appellant.

Jeffrey J. Brinker, John M. Reeves, Clayton, MO, for respondent.

ROBERT G. DOWD, JR., Judge

Maher Brothers, Inc. ("Appellant"), appeals from a summary judgment in favor of State Farm Fire & Casualty Company ("State Farm"). We reverse and remand for further proceedings consistent with this opinion.

Appellant contracted with Quinn Pork to have Quinn Pork provide certain services related to Appellant's pigs. Pursuant to the contract, Quinn Pork was to utilize its own facilities in caring for the pigs and was required to provide daily care and management of the pigs placed in Quinn Pork's facility while they are fed. All of its services were to be performed consistent with "good husbandry practices." Quinn Pork was required to check the pigs at least twice daily "to observe and monitor health" and to notify Appellant "at the first sign of sickness or other unusual conditions." Thereafter, Quinn Pork tended to the pigs at its grower nursery, and Appellant retained ownership of the pigs. Quinn Pork involved Buckman Farms and Kendrick Nutrient Management, LLC, in the care of the pigs. All of Appellant's 1,073 pigs subsequently suffocated when the ventilation was cut off due to the nursery being pumped to remove manure from the facility.[1]

Appellant filed the underlying action, alleging breach of contract and negligence claims against Quinn Pork for the loss of the pigs. Prior to trial, Appellant and Quinn Pork entered into an agreement under Section 536.065 whereby Appellant agreed not to pursue a judgment against the personal assets of Quinn Pork or Alan Quinn or by seeking a lien or other encumbrance against Quinn Pork or Alan Quinn's property. Quinn Pork agreed that there was sufficient evidence to make a submissible case and agreed not to oppose Appellant's efforts to obtain a judgment, and Appellant agreed to limit its collection efforts to any of Quinn Pork's insurance coverage, including the policy issued by State Farm.

After a bench trial, the trial court entered judgment in favor of Appellants. In its judgment, the court found that Quinn Pork made representations to Appellant that it "would provide the facilities, buildings, utilities, equipment, bedding, water, daily care and management of the pigs consistent with good husbandry" and further represented that it "would check the pigs at least twice daily to observe and monitor their health." The trial court then noted that Quinn Pork "hired agents and independent contractors to perform the work on the facilities" in its care. The trial court found that Quinn Pork was negligent in selecting "said independent contractors and subcontractors" and that the agents were "incompetent to perform the work for which they were hired." The trial court found that Quinn Pork should have known that the agents were incompetent but "failed to observe and supervise the work or to investigate the qualifications of said individuals." As a direct result of its negligence, Appellant suffered damages in the amount of $127,526.05. Judgment was entered in favor of Appellant in this amount plus interest at a rate 5.15% per annum.[2]

---

1. While not supported with citation or reference to record, in Appellant's Statement of Uncontroverted Material Facts, Appellant notes: "This pumping activity raised the methane levels in the facility making additional ventilation necessary so as to not suffocate the pigs."

2. There were no specific findings in the trial court's judgment as to Appellant's breach of contract claim.

Thereafter, Appellant brought an equitable garnishment action against State Farm, alleging that State Farm issued a general liability insurance policy to Quinn Pork in effect on the day the pigs suffocated and that the policy provided coverage for Quinn Pork's negligence related to the incident. Appellant sought judgment against State Farm in the amount of the judgment against Quinn Pork in the underlying action.

State Farm argues Appellant's claims against it are barred by an exclusionary provision in the insurance policy it issued to Quinn Pork. In particular, State Farm relies upon the following provision in that policy:

SECTION II—

EXCLUSIONS

. . .

2. **Coverage L—Farm Liability** does not apply to:

. . .

 c. **property damage** to property rented to, occupied or used by or in the care of the insured. This exclusion does not apply to **property damage** caused by fire, smoke or explosion . . .

(emphasis in original). Relying on this exclusion, State Farm moved for summary judgment, and the motion was granted in State Farm's favor.

In its judgment, the trial court determined that at the time the pigs suffocated, they were in the care, custody and control of Quinn Pork as evidenced by the language in its contract with Appellant and the judgment obtained by Appellant against Quinn Pork. The trial court concluded that the insurance policy at issue did not provide coverage to Quinn Pork for this incident because the pigs were in the care of Quinn Pork and the policy excluded coverage for property damage to property in the care of any insured.

■ In its first point on appeal, Appellant claims that the trial court erred in granting summary judgment because the care, custody and control of the pigs was a material, disputed fact, and the trial court improperly concluded the pigs were in the care, custody and control of Quinn Pork. In its second point, Appellant claims that the trial court erred in granting summary judgment because the insurance policy at issue was ambiguous and should have been construed in favor of coverage for the insured. Because our finding on Appellant's Point II is dispositive, we first address this claim.

Our review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Co.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the movant establishes "that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Id.* at 377. We review the record "in the light most favorable to the party against whom judgment was entered" and "accord the non-movant the benefit of all reasonable inferences from the record." *Id.* at 376.

■ A party asserting an equitable garnishment claim must prove a judgment was obtained in his favor against the insurance company's insured, the policy was in effect that the time of the incident and the injury was covered by the policy. *Kotini v. Century Surety Co.*, 411 S.W.3d 374, 377 (Mo. App. E.D. 2013). The defending insurance company "has the burden of proving that it is relieved from liability due to an applicable exclusion in the policy." *Id.* Here, there is no question that Appellant obtained a judgment against Quinn Pork and that the insurance policy at issue was in effect at the time of the incident. This issue is whether State Farm established

its entitlement to judgment as a matter of law because the loss of the pigs was not covered by the policy given the policy exclusion noted above.

 "The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that this Court reviews *de novo.*" *Burns v. Smith,* 303 S.W.3d 505, 509 (Mo. banc 2010). "The provisions of an insurance policy are read in the context of the policy as a whole." *Columbia Mutual Ins. Co. v. Schauf,* 967 S.W.2d 74, 77 (Mo. banc 1998). We give the language in a policy its ordinary meaning unless another meaning is plainly intended. *Id.* Absent a statute of public policy requiring coverage, where insurance policies are unambiguous, they will be enforced as written. *Peters v. Employers Mut. Cas. Co.,* 853 S.W.2d 300, 302 (Mo. banc 1993). Ambiguous language will be construed against the insurer. *Id.* "Whether an insurance policy is ambiguous is a question of law." *Progressive Northwestern Ins. Co. v. Talbert,* 407 S.W.3d 1, 9 (Mo. App. S.D. 2013).

The decisions of Missouri courts demonstrate a dichotomy in the interpretation of "care, custody or control" exclusions in insurance policies. *See* 9 Couch on Ins. § 126:20 (3rd ed.) ("There is significant disagreement over whether the phrase 'care, custody and control' is ambiguous."). *See, e.g., Aetna Cas. & Sur. Co. v. Haas,* 422 S.W.2d 316, 319 (Mo. 1968) (finding a latent ambiguity with respect to the care, custody or control exclusion contained in the policy); *Allison v. Nat'l Ins. Underwriters,* 487 S.W.2d 257, 262 (Mo. App.

1972) (concluding there was a "violent and irreconcilable ambiguity" with respect to the care, custody or control exclusion in the policy). *But see, e.g., Valentine–Radford, Inc. v. Am. Motorists Ins. Co.,* 990 S.W.2d 47, 54 (Mo. App. W.D. 1999) (finding policy with care, custody or control exclusion unambiguous); *Michigan Millers Mut. Ins. Co. v. DG & G Co., Inc.,* 569 F.3d 807, 812 (8th Cir. 2009) (finding the care, custody or control exclusion policy applied). While "care, custody or control" exclusions have been enforced as unambiguous by Missouri courts in some cases, we find less clarity in the more limited language of the present policy, which excludes coverage for damage to property "in the care of the insured." We also find no other cases where our courts have analyzed such an exclusion.[3] Earlier decisions analyzing "care, custody and control" exclusions have focused on the word "control," finding "control" to be possessory rather than proprietary and involving an exercise of dominion over the property. *Estrin Constr. Co., Inc. v. Aetna Cas. and Sur. Co.,* 612 S.W.2d 413, 428 (Mo. App. W.D. 1981) ("No doubt, control within the sense of the exclusion means physical control, either by the insured or another on behalf of the insured. The requisite control, therefore, is possessory rather than proprietary."); *Opies Milk Haulers, Inc. v. Twin City Fire Ins. Co.,* 755 S.W.2d 300, 303 (Mo. App. W.D. 1988). While State Farm could perhaps more easily demonstrate that Quinn Pork had "control" over the pigs at the time they suffocated given the fact that they remained in Quinn Pork's facility and Quinn Pork arguably "possessed" them,

---

**3.** Respondent argues that *Northwestern Mut. Ins. Co. v. Haglund,* 387 S.W.2d 230, 231 (Mo. App. 1965) supports the enforceability of the present exclusion as unambiguous, but the language of the exclusion in *Haglund* limited the insurer's liability for damage to property while it was "in charge of the insured." Not only is this not a "care, custody and control" exclusion, but it is clearly distinguishable from the present policy which excludes coverage for damage to property "in the care of the insured."

that is not the language in the present policy.[4]

In determining whether language in the policy is ambiguous, "the words will be tested in light of the meaning which would normally be understood by the average layperson." *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo. App. E.D. 1993). In addition, the language is not considered in isolation, "but by reading the policy as a whole with reference to the associated words." *Id.* "Ambiguity arises when there is duplicity, indistinctness, or uncertainty of meaning." *Id.* Language in an insurance policy is ambiguous "when it is reasonably and fairly open to different constructions." *Id.*

Here, "care" is not defined in the insurance policy, and we find "care" to be ambiguous in that the policy does not identify the level of care required to trigger the exclusion. "To ascertain the common meaning of a term, a court may look to a dictionary definition." *Strader v. Progressive Ins.*, 230 S.W.3d 621, 624 (MO. App. S.D. 2007). In this case, among other definitions, *Webster's New World College Dictionary* (5th ed.), defines "care" as both "charge; protection; custody" and as "something to watch over or attend to; a responsibility." These definitions demonstrate the ambiguity as either definition could apply. The average layperson could interpret the policy to require the property to be in the insured's charge or custody of the property, suggesting some level of exclusivity,[5] to trigger the exclusion. On the other hand, the average layperson could interpret the policy to require the insured to have any level of responsibility over the property to trigger the exclusion. Especially in the context of a farm or ranch, which this policy was clearly intended to insure, there could be many ways property could be "watched over" or "attended to" at different times and for different reasons by different entities. The effect of minimal or joint care of the pigs is unclear under the policy.[6] As written, this exclusionary

---

**4.** As a further demonstration of the distinction between "care" and "control," see *Garvison v. St. Paul Fire and Marine Ins. Co.*, 96 Or.App. 85, 771 P.2d 310, 312 (1989), where the court, in analyzing a farming liability policy, noted the horse at issue could be under the insured's "care without being under the physical control."

**5.** In applying "care, custody and control" exclusions in other jurisdictions, some courts have determined that such "care, custody and control" must be exclusive. *See e.g., Caisson Corp. v. Home Indem. Corp.*, 151 Ill.App.3d 130, 104 Ill.Dec. 508, 502 N.E.2d 1168, 1170 (1986) ("With respect to whether property is in the 'care, custody or control' of an insured so as to preclude liability under such exclusion clauses, the Illinois cases employ a two-part test. If the property damaged is within the possessory control of the insured at the time of the loss and is a necessary element of the work performed, the property is considered to be in the care, custody or control of the insured. While the control exercised by the insured *must be exclusive*, it need not be continuous, and if the insured has possessory control at the time the property is damaged, the exclusionary clause will apply." (emphasis added) (internal citations omitted)); *Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 504 (Iowa 2013) ("A second requirement for the [care, custody or control] exclusion to apply is that the insured be in the exclusive control of the damaged property.").

**6.** *See Eisenbarth v. Hartford Fire Ins. Co.*, 840 P.2d 945, 950 (Wyo. 1992). In *Eisenbarth*, the Wyoming Supreme analyzed a "care, custody or control" exclusion in a ranch liability policy and noted that "merely because the cattle were on land owned by [the insured] and within his fences does not in and of itself mean that they were within his care, custody and control as those terms are used in a ranch comprehensive liability policy." *Id.* at 949–50. The court questioned the intended limits of the exclusion and ultimately determined that "total (not shared) care, custody and control is necessary for the exclusion to apply." *Id.* at 950. In doing so, the court noted:

clause is indistinct and uncertain and reasonably open to different constructions. Accordingly, we find it ambiguous.

This case further illustrates this ambiguity given that multiple parties appear to have had some involvement in the "care" of the pigs. In the underlying judgment, the trial court noted that Quinn Pork "hired agents and independent contractors to perform the work on the facilities" in its care and found that Quinn Pork was negligent in selecting the independent contractors and subcontractors. In addition, in Appellant's petition for equitable garnishment against State Farm, Appellant averred that Quinn Pork hired agents and independent contractors to perform the work on the facilities where the pigs were kept. As written, it is uncertain how the involvement of these other parties may impact the insured's level of care for the pigs, and therefore, the application of the exclusion.

Exclusions in insurance contracts are to be strictly construed, and ambiguous terms are construed in favor of the insured. *Chase Resorts, Inc.*, 869 S.W.2d at 149, 150. "Because the scope of the exclusion clause in the policy is ambiguous, it should be construed narrowly in favor of providing coverage." *Harrison v. Tomes*, 956 S.W.2d 268, 270 (Mo. banc 1997). In addition, "unless the contract is so clear and unequivocal in its meaning that it necessarily, as a matter of law, precludes plaintiff's recovery, a motion for summary judgment based on an interpretation of the contract should be denied." *Pruitt v. Farmers Ins. Co.*, 950 S.W.2d 659, 664 (Mo. App. S.D. 1997). Here, the

language of the exclusion at issue as it applies to the facts of this case is not "so clear and unequivocal" that it necessarily precludes Appellant's recovery, and summary judgment was improperly granted with respect to this particular exclusion.

Point II is granted, and therefore, we need not address Point I. The judgment is reversed and remanded for further proceedings consistent with this opinion.

Angela T. Quigless, P.J. and Lisa S. Van Amburg, J., concur.

---

Must [the insured] have total care, custody or control (100%) in all decisions affecting the livestock? What is the effect of minimal or joint care, custody or control? What level of 'care, custody or control' calls the exclusion to play? Does it mean any level, some level, or complete 'care, custody or control?' It would have been a simple matter for the writer of the insurance contract to clearly state that care, custody or control of its insured, no matter how slight, would exclude coverage if that was the intent of the parties. *Id.*