Michael F. McAULIFFE, Bishop of the Catholic Diocese of Jefferson City, Missouri, individually and as a corporation solely known as the Diocese of Jefferson City, Missouri, Plaintiff–Appellant,

v.

NORTHERN INSURANCE COMPANY OF N.Y., a New York insurance corporation, Defendant–Appellee,

NORTHERN INSURANCE COMPANY OF N.Y., Third Party Plaintiff–Appellee,

v.

Melvin LAHR, Third Party Defendant.

No. 94–3660.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1995.

Decided Nov. 8, 1995.

Rehearing Denied Dec. 13, 1995.

Brian J. Madden, Kansas City, Missouri, argued (Jonathan R. Haden, Kansas City, Missouri, on the brief), for appellant.

Michael Andrew Childs, Kansas City, Missouri, argued (Andrew M. DeMarea, Kansas City, Missouri, on the brief), for appellee.

Before McMILLIAN and FAGG, Circuit Judges, and BENNETT,* District Judge.

FAGG, Circuit Judge.

The issue in this insurance coverage dispute is whether a comprehensive and general liability insurance policy issued by Northern Insurance Company of New York (Northern) to Michael F. McAuliffe, Bishop of the Catholic Diocese of Jefferson City, Missouri, covers a parishioner's claims against McAuliffe and a priest McAuliffe supervised.

Melvin Lahr, a priest in McAuliffe's Diocese, cultivated a sexual relationship with a

* The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa, sitting by designation.

married female parishioner Lahr was counseling on personal and spiritual matters. Contending the relationship was not consensual because Lahr took advantage of his clerical position and her vulnerable mental state, the parishioner demanded payment from McAuliffe for emotional and physical damages caused by Lahr's tortious conduct and McAuliffe's negligent supervision and retention of Lahr. McAuliffe settled the parishioner's potential claims and sought reimbursement from Northern. When Northern denied coverage for the parishioner's claims, McAuliffe brought this action for breach of contract and vexatious refusal to pay insurance benefits. The district court concluded the policy's abuse or molestation exclusion precludes coverage and granted summary judgment to Northern. McAuliffe appeals and we affirm.

The abuse or molestation exclusion in McAuliffe's policy provides that coverage "does not apply to [claims] arising out of: (a) the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or (b) the negligent ... supervision ... [or] retention of a person ... whose conduct would be excluded by (a) above." Northern maintains McAuliffe is not entitled to reimbursement because this exclusion applies to the parishioner's claims. McAuliffe contends we should construe the policy to provide coverage because the exclusion is ambiguous. The parties agree that if Lahr's conduct falls within subdivision (a), there is no coverage for any of the parishioner's claims.

■ Missouri law governs our interpretation of McAuliffe's policy in this diversity action. *B.B. v. Continental Ins. Co.,* 8 F.3d 1288, 1291 (8th Cir.1993). Under Missouri law, courts enforce the unambiguous provisions of an insurance policy according to the plain meaning of the policy language, but construe ambiguous policy provisions against the insurer. *Peters v. Employers Mut. Casualty Co.,* 853 S.W.2d 300, 302 (Mo.1993); *Robin v. Blue Cross Hosp. Serv., Inc.,* 637 S.W.2d 695, 698 (Mo.1982). Mere disagreement between the parties about a policy's meaning does not create an ambiguity. *Sanders v. Wallace,* 884 S.W.2d 300, 302

(Mo.Ct.App.1994). A policy is considered ambiguous when "there is duplicity, indistinctness, or uncertainty in the meaning of words used in the [policy]." *Peters,* 853 S.W.2d at 302.

■ Contrary to McAuliffe's contention, Lahr's manipulative and sexually opportunistic conduct was abusive within the exclusion's plain meaning. Although the participants dispute whether the affair was consensual, there is no dispute that Lahr confessed his sexual attraction to the married parishioner during a counseling session in the rectory, and Lahr admits he was the aggressor in their first sexual engagement. Lahr also admits he continued to counsel the parishioner on spiritual matters after their relationship had become sexual. Indeed, McAuliffe acknowledges the sexual relationship between Lahr and the parishioner can be described as "an abusive situation." McAuliffe also views Lahr's treatment of the parishioner as "corrupt" and "sinful." In these circumstances, we easily conclude Lahr abused the parishioner.

■ McAuliffe also contends the exclusion does not apply because the parishioner was not in Lahr's "care, custody or control." McAuliffe argues this language only encompasses the supervision of minors. We disagree. There is no language in the exclusion that limits its scope to minors. Lahr was counseling the parishioner on a number of personal and spiritual issues, and we conclude the parishioner was in Lahr's care when the abuse occurred.

■ Finally, McAuliffe contends the exclusion does not apply because Lahr's sexual acts were outside the scope of Lahr's duties with the church, and thus the parishioner was not in the care "of any insured." *See Maryland Casualty Co. v. Huger,* 728 S.W.2d 574 (Mo.Ct.App.1987) (discussing whether a priest was within the scope of his duties for the purpose of policy coverage). Believing the Missouri courts would do the same, we reject McAuliffe's suggestion to apply respondeat superior tests because their application would essentially nullify the abuse or molestation exclusion. *See Dent Phelps R–III Sch. Dist. v. Hartford Fire Ins. Co.,* 870

S.W.2d 915, 920 (Mo.Ct.App.1994); *Shelter Mut. Ins. Co. v. Haller,* 793 S.W.2d 391, 394 (Mo.Ct.App.1990). Under McAuliffe's approach, the more abusive a priest's acts become, the more certain it would be that the abuse or molestation exclusion would not apply. "This rationale cannot apply because [it produces] an absurdity." *Shelter Mut. Ins. Co.,* 793 S.W.2d at 394. We conclude Lahr was an insured within the exclusion's meaning because the parishioner was sexually exploited while Lahr performed the counseling functions the church had expected him to perform as a priest. *See All Am. Ins. Co. v. Burns,* 971 F.2d 438, 445–46 (10th Cir.1992).

In sum, the parishioner's claims are excluded from coverage under Northern's policy. Having reviewed the issues de novo, we conclude the district court properly granted summary judgment and we affirm.