*NOT RECOMMENDED FOR FULL-TEXT PUBLICATION*
File Name: 05a0698n.06
Filed: August 11, 2005

No. 04-6030

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| SECURITY TAXICAB, INC.; DARRELL L. BUFORD; GATEWAY INSURANCE COMPANY, | ) ) ) | |
| Defendants, | ) ) ) | |
| JESSICA HALE, By Her Legal Guardians, LOUIS and JANET HALE; and RACHEL RILEY, By Her Legal Guardians, BILLY and PATSY RILEY, | ) ) ) ) ) | |
| Defendants-Appellants. | ) ) | **OPINION** |

Before: MOORE and COLE, Circuit Judges, and WISEMAN,* Senior District Judge.

**THOMAS A. WISEMAN, JR., Senior District Judge.** Defendants-Appellants Jessica

Hale and Rachel Riley (collectively, "Appellants"), by and through their respective legal guardians,

appeal the district court's order granting summary judgment to Plaintiff-Appellee State Automobile

Mutual Insurance Company ("State Auto") in the underlying declaratory judgment action.

Appellants contend the district court erred in finding the State Auto insurance policy purchased by

---

*The Honorable Thomas A. Wiseman, Jr., United States District Court for the Middle District of Tennessee, sitting by designation.

co-defendant Security Taxicab, Inc. ("Security")[1] does not provide coverage for certain claims asserted by Appellants in a related state court tort action. For the reasons set forth below, we **AFFIRM**.

## I. FACTUAL AND PROCEDURAL HISTORY

Jessica Hale and Rachel Riley are mentally handicapped young women who live with their respective parents and legal guardians in rural Livingston County, Kentucky. During the time period relevant to this dispute, both women worked with other special-needs individuals at Creative Enterprises Workshops ("Creative Workshops") in Paducah, Kentucky. Each day they worked, they were transported from their homes to Creative Workshops and back again in a van owned and operated by Security pursuant to a contract between Creative Workshops and Appellants' guardians. At all times pertinent to this action, Security was insured by an insurance policy issued by State Auto.

On May 21, 2002, the regular driver of Security's Livingston County route called in sick. In his place, Security sent an employee named Karl Kraus who, unbeknownst to Security, had a history of violent felony sex offense convictions and was listed on the Kentucky Sex Offender Registry. That morning, while transporting Appellants from their homes to Creative Workshops, Kraus deviated from the regular route into a remote wooded area where he falsely imprisoned and sexually assaulted Riley. On the way back to Livingston County that afternoon, he falsely

---

[1]Security and its principal, Darrell L. Buford, were named as defendants in the underlying declaratory judgment action filed by State Auto. Neither Security nor Buford participated in the district court proceedings and neither is a party to this appeal.

2

imprisoned and sexually assaulted Hale before delivering her to her home.[2]

Appellants instituted a tort action in the Circuit Court for Livingston County, Kentucky against Security, bringing claims for sexual assault, negligence, and false imprisonment. State Auto subsequently filed the underlying declaratory judgment action in federal court seeking a determination that the insurance policy it had issued to Security does not provide coverage for the claims brought by the Appellants. Appellants answered and filed counterclaims.

Shortly before the state court action was scheduled to go to trial, the Appellants settled their tort claims and reached an agreement with Security and State Auto that Appellants would receive the maximum funds available under the State Auto policy and would not seek recovery against Security in excess of the policy limits. As part of the settlement, State Auto agreed to make an immediate payment of $500,000 to be divided equally between the Appellants, and the parties would litigate the question of whether State Auto was subject to exposure in the amount of an additional $500,000 under the terms of certain provisions of the policy issued to Security, to which the parties refer as "Coverage B," as a result of the false imprisonment claims.

The parties filed cross-motions for summary judgment in the underlying declaratory judgment action on the issue of the proper interpretation of the policy language. The district court granted State Auto's motion for summary judgment, finding State Auto had no further coverage obligation, and denied Appellants' cross-motion for summary judgment. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

---

[2]The record is unclear as to whether Riley and Hale were present during each other's assault or were falsely imprisoned while the other was being sexually assaulted, but presumably they were.

3

This Court reviews a district court's decision to grant summary judgment *de novo*. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Generally speaking, we must view the facts and any inferences reasonably drawn from them in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. Application of the "Criminal-Acts Exclusion" in Coverage B of the Insurance Policy**

The insurance policy at issue here contains three separate coverage provisions, but the sole issue before us is whether "Coverage B" of the policy provides coverage for the false imprisonment claims asserted in the state-court tort action. By its terms, Coverage B requires State Auto to defend and indemnify Security for claims of false imprisonment unless some exclusion applies.[3] Coverage B expressly excludes coverage of injuries "[a]rising out of a criminal act committed by or at the direction of any insured" (Joint Appendix ("JA") at 100) (the "Criminal-Acts Exclusion"). The term "insured" is defined to include Security's employees, "but only for acts within the scope of their employment by [Security] or *while performing duties related to the conduct of [Security's] business*." (JA at 102 (emphasis added).) There is no dispute that the false imprisonment of the Appellants in conjunction with the sexual assaults qualifies as a "criminal act." Thus, if Kraus was

---

[3]More specifically, Coverage B provides that State Auto will "defend the insured against any 'suit'" and "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." (JA at 99.) Security is the named insured under the policy. (JA at 96, 31.) The policy defines "personal and advertising injury" as any "injury, including consequential 'bodily injury,' arising out of . . . [f]alse arrest, detention, or imprisonment." (JA at 107.)

4

an "insured" as defined by the policy when he falsely imprisoned Appellants, the Criminal-Acts Exclusion will apply.

In interpreting the policy the district court concluded, with reference to Kentucky's *respondeat superior* doctrine, that Kraus was not acting "within the scope of [his] employment" when he falsely imprisoned the Appellants. (8/26/2004 Mem. Op., JA at 122.) The parties have not appealed that conclusion. The court further found, however, that the false imprisonment was committed while Kraus was "performing duties related to the conduct of [Security's] business"; that he was an "insured" at the time of the occurrence; and, therefore, that the Criminal-Acts Exclusion applied. Appellants have appealed that determination.

Appellants present three arguments in support of their contention that the district court erred in finding that Kraus qualified as an "insured" and applying the Criminal-Acts Exclusion. First, they argue that the district court's interpretation of the policy was completely unreasonable because Kraus's acts clearly occurred when he was acting in his own interest and not in furtherance of any business of Security, so he could not have been an "insured" at the time of the acts. Alternatively, Appellants argue that the language of the policy is susceptible of two reasonable interpretations, one that favors the insurer and one that favors the insured, so the interpretation favorable to the insured should be applied. Third, Appellants argue that, even if the language of the policy is unambiguous, the issue of whether Kraus's acts occurred while he was performing duties related to the conduct of Security's business is a disputed question of fact which cannot be resolved on summary judgment. State Auto disputes Appellants' arguments and also posits in the alternative that, even if Kraus was an "insured" at the time he committed the acts in question, Appellants' false imprisonment claims were subsumed by their sexual assault claims.

5

As discussed below, we conclude that the district court correctly found that the determination of whether Kraus was an "insured" under the policy is a question of law where the pertinent facts are undisputed, that the policy is not ambiguous, and that Kraus's acts fall within the Criminal-Acts Exclusion. Because we affirm the district court on those grounds, we do not reach State Auto's alternative argument in support of the district court's ruling.

### 2. Whether Kraus Was an "Insured" Under the Policy Is a Question of Law.

In this diversity case, the substantive law of the state of Kentucky applies. *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). Although Kentucky courts have held that the interpretation of an insurance policy is generally a question of law, *see, e.g.*, *MGA Ins. Co., Inc. v. Glass*, 131 S.W.3d 775, 777 (Ky. Ct. App. 2004), Appellants nonetheless characterize the coverage question as a disputed fact precluding summary judgment. In support of their position, Appellants cite several state court decisions from outside Kentucky that have denied summary judgment under somewhat similar facts. *See, e.g.*, *Dingler v. Zurich Commercial Ins. Co.*, 833 So.2d 524 (La. Ct. App. 2002) (holding that issues of fact precluded summary judgment on the question of whether an employee was acting within the course and scope of his employment, for purposes of insurance coverage, when the employee was simply sitting in his vehicle in his employer's parking lot waiting for the business to open at the time the accident occurred); *Stephenson v. Universal Metrics, Inc.*, 633 N.W.2d 707 (Wis. Ct. App. 2001) (holding that the question of whether an employee was acting within the course and scope of his employment or while "performing duties related to the conduct of [the employer's] business" for purposes of insurance coverage were questions of fact that precluded summary judgment, particularly since there was a question regarding the employee's intent in performing the act in question); *Michelet v. Scheuring Sec. Servs. Inc.*, 680

So.2d 140 (La. Ct. App. 1996) (finding that fact issues precluded summary determination of whether a security guard who assaulted and kidnapped the claimant while on the job was acting outside the scope of his employment so as not to be considered an "insured" under the security company's policy).

We nonetheless find the better rule, and the rule Kentucky courts appear to have applied, is that where the facts are undisputed and the only issue is whether the facts meet the policy definition, only a question of law for the court is presented. *See MGA Ins. Co.*, 131 S.W.3d at 777 (concluding as a matter of law that appellee was an "insured" under the contract terms); *accord* 2 Couch on Ins. § 21:13 (3d Ed.) ("[T]he construction and effect of a written contract of insurance is a matter of law, to be determined by the court and not by the jury, where there is no occasion to resort to extrinsic evidence for the purpose of resolving an ambiguity.") (footnote references omitted).

Here, the facts are undisputed, and the only issue is whether the facts meet the policy definition. Because there is no need to resort to extrinsic evidence to resolve the disputed issues in this case, the trial court correctly determined that no jury question was presented.

### 2. The Insurance Policy Unambiguously Excludes Coverage of Kraus's Acts.

As indicated above, under Kentucky law, the interpretation of an insurance policy is generally a question of law for the courts. *MGA Ins. Co.*, 131 S.W.3d at 777. Unless the terms contained in an insurance policy have acquired a technical meaning in law, they "must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986); *Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 811 (Ky. Ct. App. 2000). Thus, an insurance policy is to be

7

construed liberally in favor of the insured, and if there is doubt or uncertainty as to its meaning and it is susceptible of two interpretations, the one favorable to the insured will be adopted. *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994). In the absence of ambiguities, however, the terms of an insurance policy will be enforced as written. *Osborne v. Unigard Indem. Co.*, 719 S.W.2d 737, 740 (Ky. Ct. App. 1986); *Woodard v. Calvert Fire Ins. Co.*, 239 S.W.2d 267, 269 (Ky. 1951).

The question of whether a contract is ambiguous is also a question of law for the court. *First Commonwealth Bank v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000). An ambiguity may either appear on the face of the policy or when a provision is applied to a particular claim. *St. Paul Fire & Marine*, 870 S.W.2d at 226. The rule of strict construction against an insurance company does not mean that every doubt must be resolved against it, nor does it interfere with the premise that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning or language of the contract. Neither should a nonexistent ambiguity be utilized to resolve a policy against the company. *U.S. Fidelity & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31, 33 (6th Cir.1988) (applying Kentucky law). In short, if a term is susceptible of more than one reasonable interpretation, it is ambiguous. In that case, the court is to construe the term in favor of coverage. If the policy's terms are unambiguous, the court should merely apply them to the facts to determine whether coverage exists.

Appellants argue that the Criminal-Acts Exclusion should not apply in this case because Kraus "was no longer performing any duties relating to his employer's business" when he falsely imprisoned Appellants; rather, he had completely abandoned his duties as soon as he "deviated and detoured" from his assigned route. (Appellant's Br. at 17, 20.) In support of this position,

8

Appellants argue that the principles traditionally applied in *respondeat superior* cases to determine whether an employer is vicariously liable for an employee's acts should apply here as well:

> Where deviation from the course of his employment by the servant is *slight and not unusual*, the court may, as a matter of law, find that the servant was still executing his master's business. On the other hand, if the deviation is *very marked and unusual*, the court may determine that the servant was not on the master's business at all but on his own. Cases falling between these extremes will be regarded as involving a question of fact for the determination of the jury.

(Appellant's Br. at 22 (emphasis in original), citing *Dennes v. Jefferson Meat Market*, 14 S.W.2d 408, 409 (Ky. 1928) (determining employer's vicarious liability for act of employee).) Appellants argue that, because Kraus "deviated and detoured" from his assigned route, he had markedly deviated from his job responsibilities and was no longer conducting any duty relating to Security's business at the time he falsely imprisoned Appellants, so the exclusion should not apply.

The district court disagreed, finding that it was required under basic principles of contract interpretation to "give consideration and effect to every provision" of the contract. *See State Farm Mut. Auto. Ins. Co. v. Hobbs*, 268 S.W.2d 420, 422 (Ky. 1954). In order to give full effect to the phrase "performing duties related to his employment," the lower court concluded that the phrase must be construed as adding to and expanding upon the phrase "within the scope of employment" and not as synonymous therewith. In that light, the court reasoned that Kraus encountered the Appellants during the course of his employment and that the assaults occurred while Kraus was transporting Appellants to and from Creative Workshops, while he was "on duty" and performing tasks on behalf of his employer. Therefore, the court determined that, "[u]nder a plain and unambiguous reading" of the insurance policy, the acts occurred while Kraus was "performing duties related to the conduct of [Security's] business," and that Kraus therefore qualified as an insured at the time the acts were committed. Accordingly, the court held that the Criminal-Acts

9

Exclusion precluded coverage.

In support of the district court's ruling, State Auto points us to a Tenth Circuit case whose facts are markedly similar to those presented here, *All American Insurance Co. v. Burns*, 971 F.2d 438 (10th Cir. 1992). In that case, a volunteer bus driver for a church assaulted and molested two young girls while in the course of transporting them on the church bus. The girls' families brought suit against the church, among others, alleging negligent hiring. The church's insurer denied coverage on the basis of an exclusion for injuries resulting from an intentional act of an "insured," and the district court, applying Oklahoma law, agreed. On appeal, the victims argued that the district judge erred in finding that the volunteer bus driver was an "insured" under the policy since his criminal acts were not within the scope of his duties with the church; and, since Burns was not an "insured," the exclusion from coverage for injury arising out of willful violation of a penal statute by "an insured" should not apply. The Tenth Circuit nonetheless affirmed, stating:

> The issue before us is whether the exclusion from the policy's coverage of "personal injury arising out of the willful violation of a penal statute . . . committed by . . . any insured" applied. We are convinced that we should consider specifically whether Burns was an "insured" under Section II, paragraph 3(e), dealing with a named insured which is a religious or educational institution. In such a case additional insureds are listed: "any [ . . . ] volunteer who is duly appointed or elected; but only while acting in the scope of his duty as such in relation to the named insured." We are persuaded by Preferred Risk's argument that Burns' criminal acts occurred while he was performing the very task he was directed by the church to perform. This interpretation gives effect to the "plain, ordinary and popular" meaning of the scope of duty clause in the policy.

*Id.* at 446 (citations omitted).

Similarly, in *McAuliffe v. Northern Insurance Co.*, 69 F.3d 277, 279 (8th Cir. 1995), the Eighth Circuit, applying Missouri law, held that an insurance policy exclusion (in a policy issued to a church diocese) for "abuse or molestation by anyone of any person while in the care, custody

10

or control of any insured," applied where a priest had cultivated a sexual relationship with a married parishioner whom he was counseling on personal and spiritual matters. The court held that the priest was "an insured within the exclusion's meaning because the parishioner was sexually exploited while [the priest] performed counseling functions the church had expected him to perform as a priest." *Id.* at 279–80 (citations omitted).

The courts in both *McAuliffe* and *Burns* rejected the appellants' contentions in those cases that *respondeat superior* principles should apply. Both courts reasoned that if they applied the *respondeat superior* test under the circumstances, "an anomalous result would follow. The more heinous the employee's acts become, the more certain it would be that the penal violation exclusion would not apply." *Burns*, 971 F.2d at 446; *see McAuliffe*, 69 F.3d at 280 ("This rationale cannot apply because [it produces] an absurdity.").[4]

---

[4]A subsequent Eighth Circuit case clarified that *McAuliffe* should not be read as holding that *respondeat superior* principles never apply in insurance cases. Instead, *McAuliffe* stands for the proposition "that the principles of *respondeat superior* should not be applied if their application would nullify any portion of the insurance policy relevant to the determination of coverage." *Newyear v. Church Ins. Co.*, 155 F.3d 1041, 1044 (8th Cir. 1998). Appellants cite *Newyear* in support of their position, because in that case the court, applying *respondeat superior* principles (under Missouri law), held that a priest who engaged in sexual misconduct was not an "insured." That case is inapposite, however, because the policy provided coverage (not an exclusion) only for "acts, errors or omissions of ordained Episcopal clergy, acting within the scope of their duties as employees of the Named Insured *and* arising out of the pastoral counseling activities of these individuals." *Id.* The court held that there was no coverage because the priest was not acting within "the scope of his duties as an employee" when he molested a parishioner. Because of how that specific policy was worded, the court did not reach the question of whether his acts "arose out of [his] pastoral counseling activities."

Appellants also cite *Philadelphia Indemnity Insurance Co. v. Kansas City Home Care, Inc.*, 139 F. Supp. 2d 1194, 1196 (D. Kan. 2001), but that case is also inapposite. There, the insurance policy provided coverage for acts by employees "within the scope of their employment" or "while performing duties related to the conduct [of the employer's business]," *id.*, but the court, like the court in *Newyear*, never addressed the application of the second phrase. The court simply found that the employee in question was not acting within the scope of her employment when she allegedly influenced one of her patients to change the beneficiaries of her will and a trust but did not expressly

11

The same absurdity would occur here: Under Appellants' proposed interpretation, the policy should provide coverage if an employee commits a serious crime—unless, of course, it is done at the direction of the named insured—but then arguably would not provide coverage if he commits a more minor crime. Similarly, Appellants' emphasis on the fact that Kraus "deviated and detoured" from his designated route in order to find that the exclusion does not apply begs the question of whether we should reach a different result if Kraus had only deviated slightly or had simply stopped along the way without deviating from his route when he falsely imprisoned Appellants. We decline to adopt an interpretation that would lead to situations in which such hair-splitting would be required.

In sum, we find the reasoning in *Burns* to be persuasive. As we have recognized before, "it is settled Kentucky law . . . that the court must give all terms their plain meanings and not rewrite an insurance contract to enlarge the risk." *United States Fire Ins. Co. v. Kentucky Truck Sales, Inc.*, 786 F.2d 736, 739 (6th Cir.1986); *Simon v. Continental Insurance Company*, 724 S.W.2d 210, 213 (Ky. 1987). Courts in Kentucky are required to examine insurance policies as complete instruments to determine the extent of the coverage offered. *Grimes v. Nationwide Mutual Insurance Co.*, 705 S.W.2d 926, 931 (Ky. Ct. App. 1986). Under the plain language of the State Auto insurance policy viewed as a whole, it is clear that the parties intended to exclude coverage of criminal acts committed by employees. Kraus only had access to Appellants as a result of his employment and

---

address the question of whether the alleged acts were committed "while [the employee was] performing duties related to the conduct" of her employer. *Id.* at 1200.

Regardless, in *Burns*, *McAuliffe*, *Newyear*, and *Kansas City Home Care*, the policies at issue were interpreted as a whole in light of the conduct in question. It is significant that in each of these cases, the policy was construed so as *not* to provide coverage for criminal acts committed by employees acting outside the scope of their employment.

during the course of his employment. The false imprisonment and sexual assaults occurred while Kraus was in the process of delivering Appellants to and from their homes and Creative Workshops, and he actually did, according to the facts before us, deliver the young women as expected.

Because we conclude, as did the district court, that the false imprisonment committed by Kraus occurred while Kraus was "performing duties related to the conduct of [Security's] business," we hold that the Criminal-Acts Exception applies, and State Auto has no further liability under its policy.

## III. CONCLUSION

For the reasons set forth above, the district court's order granting summary judgment in favor of appellee State Auto is hereby **AFFIRMED**.