**Melvin LEONARD, Plaintiff,**

v.

**CUNA MUTUAL INSURANCE SOCIETY, Defendant.**

**No. 86–4365–CV–C–9.**

United States District Court, W.D. Missouri, C.D.

July 6, 1987.

James W. Gallaher, Bushmann, Neff, Gallaher & Brown, Jefferson City, Mo., for plaintiff.

Mark W. Comley, Hawkins, Brydon & Swearengen P.C., Jefferson City, Mo., for defendant.

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

In plaintiff's complaint, he seeks to recover under an insurance policy that his deceased wife allegedly purchased from defendant. Defendant seeks summary judgment pursuant to Rule 56, Federal Rules of

Civil Procedure, contending that there never was a valid insurance policy covering plaintiff's wife before her death. Plaintiff seeks partial summary judgment asserting that the life insurance policy was in force at the time of his wife's death because the premium was paid during the period of time allowed by the insurance company. Plaintiff states that if partial summary judgment is granted in his favor, the only remaining issue for trial is whether the insured's suicide was intended at the time she enrolled in the life insurance program.

## Standard for Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which

that party will bear the burden of proof at trial. *Id.* at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 2511. The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 2512.

## Factual Statement

The parties agree that there are no disputes about these material facts:

Plaintiff Melvin Leonard is and was at all relevant times a member of the Missouri State Employees' Credit Union. In May and June of 1985, defendant CUNA Mutual

Insurance Society (CUNA) mailed brochures and advertisements to credit union members promoting the sale of its group life insurance. The insurance was available to credit union members and their spouses without medical examination.

In the promotional literature sent to the Leonards the following statements were made:

Just complete and mail the enrollment form in the prepaid envelope provided. (Spouses please use form on the back.) You need send no money now ... you will be billed later. You have the opportunity to examine this insurance plan without cost for 21 days. (If satisfied, just pay your first premium within 21 days of the effective date to activate coverage.)

We must receive your payment by the due date shown on your premium notice. Just slip your payment and premium notice in the enclosed postage paid envelope and put it in the mail. That simple act insures that your family will have the greater security of this protection.

If for any reason you're not completely satisfied with this coverage, you're under no obligation to pay a cent! Do nothing and you will not have coverage.

However, if you do decide you want to keep this valuable term life plan (and we think you will) send in your first premium within 21 days of the Effective Date to start your coverage.

Is it easy to get this protection?

Yes. Simply complete the Enrollment form, circle the number of Units you wish and mail today. *Send No Money Now.* A Certificate of Coverage will be sent directly to you to review. You don't send us one cent unless you're completely satisfied.

On or about June 5, 1985, Jane Leonard completed an enrollment form and mailed it to CUNA. The enrollment form for spouses completed by Jane Leonard stated in part:

I understand that no insurance will be in effect until I am issued my certificate by the underwriter, CUNA Mutual Insurance Society, Madison, Wisconsin 53701, and the first premium thereunder is paid within twenty-one days of my effective date.

In her application, plaintiff's wife stated that she wished to purchase four units of insurance. Later CUNA notified the Leonards that Jane was eligible to purchase five units of insurance. Thereafter, the Leonards applied for the additional unit thereby raising the amount of insurance applied for to $23,000. Jane named plaintiff, her husband, as beneficiary.

Presumably, Jane Leonard received Cuna's Group Certificate and a premium notice on or about June 16, 1985. In the premium notice the following appeared:

Your life insurance certificate is enclosed! It explains all the benefits and provisions of your protection!

Your life coverage protects you from Jun 17, 1985 to July 17, 1985—when your premium is paid by Jul 8, 1985. Please allow several days for mailing and processing—act now!

In the life insurance certificate sent to Jane Leonard, CUNA stated:

PART I: TERM OF INSURANCE

B. INDIVIDUAL EFFECTIVE DATE

This insurance takes effect only after the following: (1) we [CUNA] receive your written Group Enrollment Form; and (2) you [the Customer] have paid your first premium. Your coverage then takes effect on the date shown on your Certificate Schedule.

Exception: If you live in a place where we do not require an initial premium with the Group Enrollment Form, you have 21 days from the Effective Date shown on the Certificate Schedule and during your lifetime to pay such premium. If such premium is not paid within the 21 days, your Certificate will be deemed void from the start. No benefits will be paid for any loss.

Jane Leonard lived in a place where CUNA did not require payment of the initial premium with the Group Enrollment Form.

On June 19, 1985, Jane Leonard died from a self-inflicted gunshot wound.

CUNA had not received payment of the first premium before the date of her death. Melvin Leonard sent the first premium to CUNA after Jane's death but before the July 8, 1985, deadline.

### Discussion

Plaintiff argues that a valid life insurance contract was entered into between Jane Leonard and CUNA prior to her death because plaintiff paid the initial premium within the 21 day "grace" period established by CUNA. CUNA asserts that the life insurance policy never became effective because the initial premium was not paid during the lifetime of the insured.

An insurance policy is a contract and the law of contracts applies to it. *Bartleman v. Humphrey*, 441 S.W.2d 335 (Mo. 1969). "Whether a contract is ambiguous, is a question of law. If the court determines there is no ambiguity, then the ... interpretation of the contract is for the court to determine, as garnered from the four corners of the document." *Press Machinery Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir.1984) (construing Missouri law). A disputed provision of a contract should be viewed in the context of the entire policy. Words should be given "their ordinary meaning as understood by average people." *Atkins v. Hartford Casualty Insurance Co.*, 801 F.2d 346, 348 (8th Cir.1986). "A construction which may render a portion of the policy illusory should not be indulged in." *Cano v. Travelers Insurance Co.*, 656 S.W.2d 266, 271 (Mo. banc 1983).

■ Plaintiff contends that the agreement between the parties is made up of descriptive brochures, the certificate, the application and the premium notice. Documents other than the certificate of insurance can be part of the contract between the insurer and insured. *See, e.g., Morris v. Travelers Insurance Co.*, 546 S.W.2d 477, 486 (Mo.Ct.App.1976) (group life insurance contract consisted of certificate, the plan of insurance and descriptive brochure); *Crawford v. Mid–America Insurance co.*, 488 S.W.2d 255, 258–59 (Mo.Ct. App.1972) (advertising material submitted to group insurance policyholders constitutes part of the insuring agreement); *cf. Lutsky v. Blue Cross Hospital Service, Inc.*, 695 S.W.2d 870 (Mo. 1985) (two brochures explaining group medical insurance plan contained provisions essential to a complete contract and therefore had contractual force). Therefore, the provisions of the insurance agreement are found in the advertising and descriptive brochures, insured's application, the premium notice and certificate.

■ Plaintiff argues that when defendant sent Jane Leonard the certificate of insurance, defendant communicated its acceptance of insured's application and therefore the policy was in force from June 17, 1985, the effective date stated on that certificate. However, the promotional literature as well as the certificate state the "effective date" shown on the certificate became the date coverage commenced only if the initial premium was paid within the 21 day period. Payment of the first premium is a condition precedent to validity of a policy. *Bartleman v. Humphrey*, 441 S.W.2d at 342. Thus, although defendant accepted insured's application and issued a certificate of insurance to her, insurance coverage was contingent upon payment of the initial premium within 21 days of the effective date stated on the certificate. Here, the premium was paid within 21 days after June 17, 1985, the effective date stated on the certificate.

Relying on the insurance certificate, defendant contends that not only must the initial premium have been paid within 21 days from the effective date but the insured must pay the premium during her life. Because Jane Leonard did not survive to pay the first premium under the policy, defendant contends that "by operation of the policy's plain and enforceable terms, it did not become effective."

■ Plaintiff responds that the requirement that the premium must be paid during Jane Leonard's lifetime does not appear in the application form, in the advertising brochures or in the premium notice. Relying on *Crawford v. Mid–America Insur-*

*ance Co.,* 488 S.W.2d at 258, plaintiff argues that the insurer is bound by the coverage it advertises in its brochures and not by the more restrictive language in the policy of insurance.

In *Crawford,* the issue was whether the insurance company was bound by less restrictive coverage provisions stated in the application and advertising material or by the more restrictive provisions in the policy. Similar to the facts in this case, the insurance company had distributed the application form to potential customers to purchase the coverage of a master group policy.

> In such a case the modern trend of authority is that insurer will not be permitted to assert the more stringent provisions of the policy. . . . 'Fortunately, the courts, beginning to realize the relationship between the parties, particularly that the contract as set forth the insurance policy often is practicably unintelligible and generally never read, whereas brochures and other material given out by the insurer are read and relied upon, are now enforcing the contract expected by the insured, that is the contract set out in the brochure or prospectus.'

*Crawford,* 488 S.W.2d at 258 (quoting 13 Appleman, *Insurance Law and Practice* § 7534). Also, the Court concluded that ambiguities as to the extent of afforded coverage are created if the provisions of the application and promotional material are compared with the policy. *Crawford,* 488 S.W.2d at 259. Applying these principles, the Court enforced the more lenient provisions stated in the application and promotional materials over the more restrictive language of the policy.

Furthermore, although a court is bound to give the plain language of the contract its plain meaning if there is no ambiguity in the language of the policy. *Bennett v. American Life & Accident Insurance Co.,* 495 S.W.2d 753, 757 (Mo.Ct.App.1973),

> [a]n insurance contract reasonably susceptible of any interpretation favorable to the insured will be so construed in order to avoid a forfeiture. Though it is the duty of the court to reconcile conflict-

ing clauses insofar as their language reasonably permits, when reconciliation fails, inconsistent provisions will be construed most favorably to the insured. *Bellamy v. Pacific Mutual Life Insurance Co.,* 651 S.W.2d 490, 495–96 (Mo. banc 1983) (citations omitted).

Here, the promotional material, the application and the premium notice do not make any reference to a requirement that the applicant must pay the initial premium within the applicant's lifetime. The consistent thrust of the promotional literature is to entice credit union members into buying insurance for themselves and their spouses with statements about how easy it is to get this "guaranteed protection." For instance, plaintiff and his wife were told in the promotional literature that there is no need to send money with the application; that they could examine the insurance plan "without cost for 21 days. (If satisfied, just pay your first premium within 21 days of the effective date to activate coverage.)" Furthermore, Jane Leonard told CUNA in the Spousal Application: "I understand that no insurance will be in effect until I am issued my certificate by the underwriter [CUNA] and the first premium thereunder is paid within 21 days of my effective date." If there are any words that the applicant is likely to have read it is these because the applicant's signature appears immediately under these words. The Leonards were repeatedly told that all they needed to do to get this insurance was to send in the application and pay the first premium within 21 days of the effective date shown on the certificate. No reference is made to a requirement that the applicant must be alive when the first premium is paid. No reference is made to any requirement that the insured, whether a member or a spouse, must actually make the payment. In fact, the promotional material suggests that the member ought to be interested in getting the coverage for his (her) spouse. Finally, the first premium notice that accompanied the certificate of insurance states only "your life coverage protects you from June 17, 1985 to July 17, 1985—when your premium is paid by July 8, 1985." The plain meaning of

these words is that Jane Leonard had insurance protection from June 17, 1985, if the premium was paid by July 8, 1985. Again, there is no suggestion that Jane Leonard needed to be alive when the premium was paid or that somebody else could not pay it. These restrictions appear only in the fine print in the certificate of insurance. CUNA cannot add more restrictive terms to the contract after the application has been received and accepted by it.

Therefore, it is hereby ORDERED that:

1) plaintiff's motion for partial summary judgment is granted;

2) defendant's motion for summary judgment is denied; and

3) pursuant to the parties' request, the deadline for completion of all discovery is extended to August 6, 1987.