**Jeffrey WOLFSON and Allied Development Corporation, Plaintiffs/Appellants,**

v.

**Alan BERNSTEIN and Moneta Group, Inc., Defendants/Respondents.**

No. 71415.

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 18, 1997.

---

1. Respondent's motion to dismiss the appeal on the basis of Appellant's failure to comply with Rule 84.04 is denied.

John Lawrence Davidson, Burton H. Shostak, St. Louis, for plaintiffs/appellants.

Thomas Magee, St. Louis, for defendants/respondents.

CHARLES B. BLACKMAR, Senior Judge.

The plaintiffs alleged in their petition that the defendants had improperly performed the duties owed by insurance brokers to their clients. The trial court directed a verdict for the defendants at the close of the evidence. The plaintiffs appeal, asserting various theories of recovery in each of their five points. We affirm.

In reviewing the granting of a motion for directed verdict we view the evidence in the light most favorable to the plaintiffs, giving them the benefit of all reasonable inferences, and disregard conflicting evidence. See, among the many cases announcing these principles, *Grossman Iron and Steel Co. v. Bituminous Casualty Corporation*, 558 S.W.2d 255, 258 (Mo.App.1977). Plaintiffs nevertheless have the burden of introducing substantial evidence in support of each of the elements of the claim sought to be estab-

lished. *Fondren v. Redwine*, 905 S.W.2d 156, 157 (Mo.App.1995). The plaintiffs, furthermore, are bound by uncontradicted evidence which they introduce, and this includes the direct testimony of opposing parties called to the stand adversely. *Hurlock v. Park Lane Medical Center*, 709 S.W.2d 872, 879 (Mo.App.1985). The facts stated are based on the plaintiffs' uncontradicted evidence.

Ralph E. Kaufman was the president of REK Development, which is a plaintiff under its present name of Allied Development Corporation. Jeffrey Wolfson owned a shareholding interest in REK equal to Kaufman's but was not shown to have held any office in that corporation or to have had any authority to transact any of the corporation's business, at least until Kaufman became unavailable in January of 1990. Wolfson joined as plaintiff but counsel conceded at oral argument that such claims as might be established belong solely to REK. Defendant Alan Bernstein is a licensed insurance broker affiliated with defendant Moneta Group, Inc. Inasmuch as we hold that the plaintiffs have not established any claim of any kind we are not obliged to consider the relative liability of Bernstein and of Moneta.

During the summer of 1989 Kaufman asked Bernstein to try to locate "key man" insurance coverage on his life in the amount of $500,000, payable to REK. One insurance company represented by Bernstein offered a policy which was not acceptable to Kaufman. Bernstein then got in touch with Conway Group, another broker, as a result of which Kaufman applied to North American Life and Casualty Company (initially a defendant here, but dismissed following a settlement) for a term life insurance policy in the amount of $500,000. The application expressly stated as follows: "It is agreed that ... any policy issued as a result of this application shall not become effective prior to payment of the first premium." North American undertook to provide the requested coverage and forwarded a policy to Conway Group shortly after December 15, 1989, and Conway transmitted the policy to Bernstein. The transmittal letter specified that the requirements for putting the policy into effect had to be completed by December 29, 1989. Bernstein was

called as a witness by the plaintiffs and testified on direct examination that he called Kaufman several times to request a check for the first premium, but that he received no check. He obtained an extension of the December 29 date until January 18, 1990, the insurer specifying that, after that date, a certificate of continued good health would be required. No premium was paid or tendered within the time limits as extended.

On January 9, 1990, Bernstein met with Kaufman, Wolfson, and others interested in REK. The plaintiffs make much of a talking paper Bernstein presented to the meeting, containing the statement, "We have recently placed $500,000 in force with North American Life and Casualty Company." Bernstein testified on direct examination by the plaintiffs that he communicated with Kaufman by telephone and fax after the meeting, seeking payment of the premium.

On January 17, 1990 Kaufman was reported missing. Bernstein learned of this disappearance on January 19, and of the fact that Kaufman had left a note, the contents of which were not revealed to Bernstein. He then procured a check from REK for the amount of the premium, which he forwarded to Conway Group. On advice of his attorney he asked REK to request return of the check and cancellation of the policy, which it did, in a letter signed by Wolfson dated January 23, 1990. On that same day Kaufman died by his own hand.

■ The plaintiffs' first point is based on a theory of negligent misrepresentation, declaring on a statement by Bernstein to Wolfson in December of 1989 and the written statement of January 9, 1990, in which Bernstein said that the policy was in effect. REK, however, had no right to rely on these statements, because Kaufman had signed an application expressly agreeing that payment of the first premium was a condition precedent to the effectiveness of the policy. The plaintiffs are bound by this statement. There is no showing that any person other than Kaufman was acting for REK with regard to the procurement of insurance. REK had no basis for believing that Bernstein was an agent for North American with authority to waive or excuse any contractual condition. No evidence supports the plaintiffs' burden of establishing such agency. Inasmuch as

there is no proof of the express condition of premium payment, of which Kaufman knew, there is no basis for submitting Count I to the jury. *Colgan v. Washington Realty Company*, 879 S.W.2d 686, 689 (Mo.App. 1994).

■ What has just been said also disposes of the plaintiffs' fifth point, which declares on a theory of fraud and deceit. Justified reliance is an essential element of this claim. *Richmeyer v. Sugar Creek Builders, Inc.*, 856 S.W.2d 382, 384 (Mo.App.1993).

■ In their second point the plaintiffs charge that there was substantial evidence that Bernstein breached his duty to his client in failing to apply for or procure a term life policy on Kaufman's life in the amount of $1,150,000, in accordance with an option discussed at the meeting of January 9, 1990. On January 12, 1990 Jack T. Stauder of Conway Group advised Bernstein that North American would not write a $1,150,000 policy, but would reconsider the decision in six months. The plaintiffs complain that Bernstein did not report this rejection to REK. There is no evidence, however, that REK ever instructed Bernstein to apply for such a policy. Several options were presented at the January 9 meeting, but there is no showing that there was a decision on any option. It is of no significance that Conway inquired as to the insurer's willingness to increase the coverage and reported its decision to Bernstein, inasmuch as REK is not shown to have requested the coverage. Thus there is no showing of damage from anything Bernstein did or failed to do with regard to any additional coverage.

■ Point III charges that a jury could have found that Bernstein was negligent in calling Kaufman on the telephone in attempting to collect the premium rather than paying a personal visit, because Bernstein was required to meet with Kaufman in person to ascertain whether anything appeared amiss in his health or appearance. Stauder testified that such a meeting was required of any soliciting insurance agent. It would seem that any duty so to meet would be for the benefit of the insurer rather than of the insured. The plaintiffs apparently argue that, had Bernstein delivered the policy without a face-to-face meeting, the insurer would

have a defense to a claim of liability under the policy, and that Kaufman was justified in not paying the premium until Bernstein met with him in person to deliver the policy and collect the premium. The claim is not sound. Kaufman knew that the policy could not go into effect until he paid the first premium. There is no showing that the premium was paid or tendered within the extended time for compliance or that Kaufman sought a personal meeting. The policy never became effective, and consideration of possible defenses to a policy which never became effective policy is premature.

In Point IV it is argued that Bernstein, by concealing evidence from North American as to Kaufman's disappearance, breached his duty to the insurer and deprived REK of the opportunity of knowing whether North American would issue the policy even through Kaufman's whereabouts were unknown. The short answer to this argument is that North American had already specified the circumstances under which it would issue the policy after its deadline expired, these being the furnishing of a statement signed by Kaufman to the effect that his health had not changed since the signing of the application. No jury could reasonably find that North American or any other insurer would issue a policy on the life of a person who was reported missing after having left a note of unspecified contents. If Bernstein breached his duty to the insurer, this breach is not shown to have caused a loss to REK. Cases in which an agent's breach of duty caused an insurer to issue a policy on which it later avoided liability are of no help to plaintiff, because the insured failed in performance of a condition which he expressly agreed to, and so no policy ever became effective.

Because none of the theories advanced is supported by the evidence the trial court did not err in directing a verdict.

The judgment is affirmed.

CRAHAN, C.J., and RHODES RUSSELL, J., concur.