Earl WRIGHT, Appellant,

v.

Billy BLEVINS, Respondent.

No. ED 97660.

Missouri Court of Appeals, Eastern District, Division One.

June 26, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 2012.

Application for Transfer Denied Oct. 30, 2012.

David C. Knieriem, Clayton, MO, for Appellant.

Jon Rolla Sanner, Clayton, MO, for Respondent.

ROY L. RICHTER, Judge.

Earl Wright ("Plaintiff") appeals both the trial court's grant of summary judgment in favor of American Family Mutual Insurance Company ("American Family") and, following a jury trial, the adverse verdict and judgment entered against Plaintiff and for Billy Blevins ("Defendant"), on Plaintiff's suit against Defendant following an automobile accident. We affirm.

## I. BACKGROUND

On May 27, 2009, Plaintiff went to the office of insurance agent Darrell Ditto ("Ditto") seeking insurance coverage for his 2005 Cadillac. Ditto, as an authorized agent of American Family, submitted Plaintiff's application to reinstate a preexisting, expired policy on the Cadillac. Plaintiff then provided Ditto a check for $217 to serve as the initial premium payment and Ditto printed Plaintiff a temporary insurance card. That temporary insurance card, however, reflected the incorrect insurance policy number. Whether due to a typographical error by Ditto or a computer error, the 18 alphanumeric characters that composed the policy numbers differed in two places.

Correct insurance policy number: 1177–7795–04–*96–S* PPA–MO

Temporary insurance card indicated: 1177–7795–04–*99–F* PPA–MO

On June 2, 2009, U.S. Bank returned Plaintiff's check for $217 as unpaid due to insufficient funds and mailed Plaintiff a notice of the returned check. In addition, on June 11, 2009, American Family sent Plaintiff a notice of cancellation due to his failure to pay the premium, referencing the "*96–S* PPA" policy and identifying the 2005 Cadillac by its vehicle identification number. Plaintiff made no subsequent attempt to tender payment after receiving the notifications of his unpaid check and the impending cancellation of his policy. Plaintiff concedes there is no coverage under policy number "*96–S* PPA" and that policy is not at issue here.

Later, on October 18, 2009, Plaintiff was involved in a motor vehicle accident with Defendant at the intersection of Skinker and Page. Plaintiff then filed suit in the Circuit Court of St. Louis County seeking: (1) personal injury damages from Defendant, and (2) insurance coverage from American Family for the property damage to the Cadillac. The trial court granted American Family's motion for summary judgment and Plaintiff's case against Defendant proceeded to trial. During closing argument, counsel for Defendant stated, in pertinent part:

> I would submit, ladies and gentlemen, that the evidence in this case supports a finding that [Plaintiff] was 100 percent at fault for causing this accident for his, one, failing to yield the right of way and, secondly, his failure to keep a careful lookout, and when you get to this verdict director, ladies and gentlemen, I ask that you write a zero percent on the line for Defendant and a one hundred percent for Mr. Plaintiff with a total of $100,000 at the bottom there.

The jury then began deliberations and sent a question asking the trial court "[w]as it misworded when the defense asked for $100,000 on the jury form?" Counsel for both Plaintiff and Defendant then met with the trial court to determine what answer should be provided. In that discussion, Plaintiff's counsel agreed that Defendant's counsel made a "clear and

obvious misstatement" during his closing argument, but he nevertheless believed the court should only instruct the jury that they are "to be guided by the evidence and the instructions provided." In response, the trial court noted that it was clear there was "absolutely no evidence to support $100,000 for either side" and it remained unclear which side, plaintiff or defendant, would be hurt by the misstatement. Plaintiff's counsel again agreed, but persisted in his objection. The trial court further stated, "I think it's clearly a problem. I think that the Court can answer the question ... by simply saying yes." Ultimately, the trial court answered the jury's question "yes."

The jury returned a verdict finding Defendant 0% liable and Plaintiff 100% at fault for the accident. Plaintiff's motion for a new trial was denied and this appeal follows.

## II. DISCUSSION

### Point I: Trial Court did not Err in Granting American Family's Summary Judgment Motion

In Plaintiff's first point, he alleges the trial court erred in granting American Family's motion for summary judgment, finding Plaintiff was uninsured on the date he was involved in an automobile accident with Defendant. Plaintiff's argument on this point focuses on his belief that payment is not a condition precedent to the issuance of an insurance policy and American Family did not properly notify Plaintiff of the policy's subsequent cancellation. We disagree.

### Standard of Review

"Appellate review of summary judgment is de novo." *Finnegan v. Old Republic Title Co. of St. Louis, Inc.*, 246 S.W.3d 928, 930 (Mo. banc 2008). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.*

### Analysis

A plaintiff seeking to establish a prima facie case of insurance coverage must show that: (1) the insurer issued its policy to the insured, (2) the insured paid the premium, (3) a loss was caused by a peril the policy insures against, and (4) the insured gave notice of the loss to the insurer as required by the terms of the policy. *Valentine–Radford, Inc. v. Am. Motorists Ins. Co.*, 990 S.W.2d 47, 51 (Mo.App. W.D. 1999). In this case, Plaintiff most notably failed to establish the second element.

In regards to the "99–F PPA" policy number given on the temporary insurance card, Plaintiff contends American Family did not properly cancel the policy and coverage was in force as of the date of his accident because the notice of cancellation referenced the "96–S PPA" policy number instead of the "99–F PPA" listed on the insurance card. This contention lacks merit.

Plaintiff never paid the premium on his car insurance policy. Missouri law is clear-the nonpayment of an insurance premium voids the policy. *See, e.g., Blair by Snider v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605, 607 (Mo. banc 2003); *Shelter Mut. Ins. Co. v. Flint*, 837 S.W.2d 524, 531 (Mo.App. W.D.1992). In this case, Plaintiff's check for $217 was returned as unpaid due to insufficient funds. His act of simply delivering the check to Ditto was not enough to satisfy the payment requirement. Instead, the payment of insurance premiums by check is conditional until the check is actually paid, absent an agreement to the contrary. *Walters Auto Body Shop, Inc. v. Farmers Ins. Co., Inc.*, 829 S.W.2d 637, 640 (Mo.App. W.D.1992).

Here, no such contrary agreement existed and, as a result, the premium was not paid.

■ Moreover, the issuance of the temporary insurance card, by itself, does not validate the existence of the policy. "[I]dentification cards can only be meant to be valid if the premium is paid by the due date." *Flint*, 837 S.W.2d at 531. As a practical matter, an insurer issues temporary insurance cards prior to receipt of the premium because the law requires a motorist to provide proof of liability insurance upon request. *Id.*; *see also* Section 303.024.5 RSMo 2000[1] ("The operator of an insured motor vehicle shall exhibit the insurance identification card on the demand of any [authorized enforcement official] who lawfully stops such operator."). Absent such accommodation, a motorist would be exposed to a period of time where they are unable to provide proof of insurance and vulnerable to penalty. *Flint*, 837 S.W.2d at 531. Plaintiff's receipt of the temporary insurance card did not provide coverage. It merely indicated coverage would exist if he paid his premium, which he did not do.[2]

Based upon our review of the facts and applicable law, we find that the trial court properly determined that "it is hard to conceive of any legitimate argument that [Plaintiff] should be entitled to insurance coverage for a motor vehicle collision that occurred 144 days after [he] passed a bad check as conditional payment for insurance coverage."

Point I is denied.

---

1. All statutory references are to RSMo 2000.

2. We similarly find no oral contract of insurance was created by the temporary insurance card because Plaintiff failed to provide "contemporaneous payment of the premium" and the card gave no indication of the liability

*Point II: Trial Court did not Err in Overruling Plaintiff's Objection to Response to Jury Question*

■ Plaintiff's second point on appeal alleges the trial court erred in overruling his objection to the trial court's response to the jury's question. Specifically, Plaintiff argues the trial court improperly answered the jury's question and, as a result, "it cannot be said [Plaintiff] was not prejudiced by how the jury was to allocate fault after receiving" that answer. We disagree.

*Standard of Review*

■ "The response to a jury question is within the sound discretion of the trial court and the practice of exchanging communications between the judge and jury is not commended." *State v. Guinn*, 58 S.W.3d 538, 548 (Mo.App. W.D.2001). The court must balance the need to discourage communications that cannot be answered, such as requests for more evidence or argument, while simultaneously not discouraging legitimate inquiries. *Id.* Consequently, neutral responses reminding the jury to be guided by the evidence presented and to follow the instructions given are the safest and most favored. *Id.* However, if a jury's question "indicates confusion about the instructions the court should respond with 'concrete accuracy.'" *Id.* (quoting *State v. Clay*, 975 S.W.2d 121, 134 (Mo. banc 1998)).

*Analysis*

In this case, the jury expressed concern over a misstatement made by Defendant's counsel concerning how they were to fill

---

limits of the policy. *See Chailland v. M.F.A. Mut. Ins. Co.*, 375 S.W.2d 78, 81 (Mo. banc 1964) (oral contract of insurance requires: (1) the subject matter, (2) the risk insured against, (3) the amount, (4) the duration of the risk, and (5) the premium.).

out the verdict instruction sheet. Both counsel for Defendant and counsel for Plaintiff agreed that it was a misstatement and the evidence did not support a $100,000 award either way. As the trial court noted, were the jury to try and reconcile the statement made by Defendant's counsel with the verdict sheet, it would lead to liability for the accident being assigned to Plaintiff and Defendant being given a $100,000 damage award, an award which was wholly unsupported by the evidence. Instead of allowing that confusion to persist regarding the jury instruction sheet, the trial court simply answered, "yes." On this record, we find that Plaintiff was not prejudiced by the trial court's answer.

The jury posed a question to the trial court that clearly indicated confusion about completing the instruction sheet. On that basis, the trial court did not act improperly in responding with an accurate statement. *See Guinn*, 58 S.W.3d at 548 (jury question concerning confusion about instructions necessitates response with "concrete accuracy"). Furthermore, the trial court's answer was limited to the question asked, and did not answer in such a way as to somehow coerce a verdict. *See State v. Johnson*, 744 S.W.2d 868, 871 (Mo.App. W.D.1988); *see also State v. Griffith*, 312 S.W.3d 413, 421 (Mo.App.S.D.2010); *Purvis v. State*, 215 S.W.3d 745, 747 (Mo.App. S.D.2007). At trial, Plaintiff's counsel conceded that what occurred was simply a misstatement and that it was unclear which party the misstatement would prejudice. Even now, Plaintiff amorphously contends, "it cannot be said [he] was not prejudiced." Accordingly, absent prejudice, we are unable to find reversible error.

Point II is denied.

## III. CONCLUSION

The judgment is affirmed.

CLIFFORD H. AHRENS, P.J., and GARY M. GAERTNER, JR., J., concur.