# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1835

_____

Natasha Dallas

*Plaintiff - Appellant*

v.

American General Life and Accident Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: November 14, 2012
Filed: March 11, 2013

_____

Before RILEY, Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

_____

RILEY, Chief Judge.

Natasha Dallas sued American General Life and Accident Insurance Company (American General), alleging American General breached the terms of a life insurance policy Dallas purchased. On cross-motions for summary judgment, the

district court[1] denied Dallas's motion for partial summary judgment and granted judgment to American General. Dallas appeals, and having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

From October 26, 2009 to November 29, 2010, Dallas, a Missouri resident, served as an insurance agent for American General, a Tennessee corporation with its principal place of business in Nashville, Tennessee. On May 25, 2010, Dallas wrote a life insurance application for a $100,000 ten-year term life insurance policy on the life of her father, Alvin Walker, naming herself as the beneficiary. American General issued the policy with a policy date of June 28, 2010.

As part of the application process, Dallas executed an Automatic Bank Check Authorization Agreement (ABC agreement), which authorized American General to automatically withdraw the monthly premium for the policy from Dallas's designated checking account on the twenty-eighth day of each month. In completing the ABC agreement, Dallas provided an inaccurate account number and incorrectly listed Walker as the account holder. As a result, Dallas's initial ABC premium payment failed.[2] On July 4, 2010, American General sent notice of the failed payment to Walker, as the designated account holder. Dallas learned of the failed payment on approximately July 13, 2010. Walker died suddenly July 29, 2010.

On August 2, 2010, Dallas submitted a claim for death benefits to American General. In late August, Dallas sent two separate payments to American General. On

---

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

[2]Dallas also has admitted she did not have sufficient funds in the account to cover the initial premium payment even if she had provided accurate account information.

November 5, 2010, American General refunded Dallas's payments, stating it did not accept premium payments after the insured's death. On January 21, 2011, American General denied Dallas's claim for benefits, explaining the policy did not become effective because Dallas had not paid any premium before Walker's death.

On March 24, 2011, Dallas sued American General in Missouri state court for failing to pay benefits owed under the policy. On April 1, 2011, American General removed the case to the federal district court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). See 28 U.S.C. § 1441. On cross-motions, the district court denied Dallas's motion for partial summary judgment and granted summary judgment to American General. The district court determined the policy was not effective at the time of Walker's death because Dallas failed to make the initial premium payment. This appeal followed the district court's denial of Dallas's motion to alter or amend the judgment.

## II.    DISCUSSION

We review de novo the district court's resolution of cross-motions for summary judgment, "viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences." Crawford v. Van Buren Cnty., Ark., 678 F.3d 666, 669 (8th Cir. 2012). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree Missouri substantive law governs this diversity case. "We must predict how the Supreme Court of [Missouri] would rule, and we follow decisions of the intermediate state court when they are the best evidence of [Missouri] law." Friedberg v. Chubb & Son, Inc., 691 F.3d 948, 951 (8th Cir. 2012).

### A.    Policy

The policy in this case is a term life insurance policy that requires American General to pay death benefits "[i]f [Walker] dies before this Policy's Termination date

-3-

shown on the Policy Schedule and while this Policy is in force." The policy, which incorporates the application, provides, "This contract is made in consideration of [Dallas's] application and the payment of premiums as provided."

With respect to "PAYING PREMIUMS," the policy states "[t]he Initial Premium is due on the Policy Date [June 28, 2010]" and "[e]ach premium must be paid on or before its due date." The policy further provides

**GRACE PERIOD**
If a premium, *other than the Initial Premium*, has not been paid on its due date, Your Policy will remain in force for a Grace Period of 31 days.

**LAPSE**
If any premium is not paid before the end of its Grace Period, this Policy will lapse. The date of lapse is the date on which the unpaid premium was due. Lapse will terminate this Policy unless it is later reinstated.

(Emphasis added).

The ABC agreement, which was incorporated into the policy, authorized American General to withdraw Dallas's premium payments, including the initial premium, automatically from Dallas's designated checking account on the twenty-eighth day of each month. The ABC agreement stated "no payment shall be deemed to have been made unless and until [American General] receives actual payment in its Home Office. Use of the ABC plan shall in no way alter or amend the provisions of the policy[] as to premium payment." The ABC agreement further stated Dallas understood "no insurance applied for will become effective unless [American General] issues a policy from the application for this policy, the first premium is paid, and any other terms and conditions of the policy are met."

**B. Coverage**

To establish coverage under the policy, following Missouri law, Dallas must "show[] (1) issuance and delivery of the policy; (2) payment of the premium; (3) a loss caused by a peril insured against; and (4) notice and proof of loss to the insurer." See Valentine-Radford, Inc. v. Am. Motorists Ins. Co., 990 S.W.2d 47, 51 (Mo. Ct. App. 1999). The primary dispute in this appeal is whether Dallas timely paid the required premium.

Specifically, Dallas and American General dispute the meaning and effect of the proviso "no insurance applied for will become effective unless [American General] issues a policy from the application for this policy, the first premium is paid, and any other terms and conditions of the policy are met." American General contends the proviso makes payment of the initial premium a condition precedent to the policy becoming effective. Dallas contends the term "unless" makes payment a condition subsequent which "requires that a notice of policy cancellation be sent, or the policy terminated in some other manner specified by the policy."

"Insurance policies are contracts," governed by general "rules of contract construction." Blair v. Perry Cnty. Mut. Ins. Co., 118 S.W.3d 605, 606 (Mo. 2003) (en banc). "When there is ambiguity in an insurance policy, the Court must interpret the policy in favor of the insured." Todd v. Mo. United Sch. Ins. Council, 223 S.W.3d 156, 160 (Mo. 2007) (en banc). "However, 'where insurance policies are unambiguous, they will be enforced as written.'" Id. (quoting Rodriguez v. Gen. Accident Ins. Co. of Am., 808 S.W.2d 379, 382 (Mo. 1991) (en banc)).

Dallas does not deny she provided American General inaccurate information in the ABC agreement for an account containing insufficient funds and, thus, failed to make the initial premium payment due on June 28, 2010. Cf. Wright v. Blevins, 380 S.W.3d 8, 11 (Mo. Ct. App. 2012) (explaining that delivering an initial premium payment by check "returned . . . as unpaid due to insufficient funds" did not "satisfy

-5-

the payment requirement" because "the payment of insurance premiums by check is conditional until the check is actually paid, absent an agreement to the contrary").[3] Instead, Dallas contends "the policy language fails to establish payment as a condition precedent to the formation of the insurance contract," permitting her to tender the past-due premium payments in August 2010 and make the policy effective retroactively, even though Walker died in July of that year.

Dallas's interpretation of the payment provision is contrary to Missouri law and the terms of the policy. Generally, under Missouri law, "payment of a first premium is a condition precedent to validity of the policy." Bartleman v. Humphrey, 441 S.W.2d 335, 342 (Mo. 1969) (citing Fernan v. Prudential Ins. Co. of Am., 162 S.W.2d 281, 283 (Mo. Ct. App. 1942) (deciding payment "of the first annual premium, [was] a condition precedent to the attachment of the risk")); accord Leonard v. Cuna Mut. Ins. Soc'y, 665 F. Supp. 759, 762 (W.D. Mo. 1987) (applying Bartleman); Wright, 380 S.W.3d at 11 ("Missouri law is clear—the nonpayment of an insurance premium voids the policy."). In Wright, the Missouri Court of Appeals rejected the argument "that payment is not a condition precedent to the issuance of an insurance policy and [the insurer] did not properly notify [the purported insured] of the policy's subsequent cancellation." Wright, 380 S.W.3d at 11. Dallas makes the same argument here, but fails effectively to distinguish or attenuate Wright.

Even if we were to conclude Bartleman and Wright do not apply here, Dallas does not persuade us the payment provision is a condition subsequent rather than a condition precedent under Missouri law. "A condition subsequent is a condition 'which by its express terms provides for an ipso facto cancellation on the happening or non-occurrence of a stipulated event or condition.'" Pointe Dev., LLC v. Enter.

___

[3] "It does not appear that Missouri's adoption of the Uniform Commercial Code altered this common-law rule." Estate of Nelson v. Mo. Dep't of Soc. Servs., MO HealthNet Div., 363 S.W.3d 423, 426-27 (Mo. Ct. App. 2012).

Bank & Trust, 316 S.W.3d 543, 546 (Mo. Ct. App. 2010) (quoting Reed Stenhouse, Inc. of Mo. v. Portnoy, 642 S.W.2d 947, 952-53 (Mo. Ct. App. 1982)). The term "condition subsequent" is being abandoned in favor of "the concept of an event that terminates a duty." Id. at 547 n.3.

In contrast, "a condition precedent is an act or event that must be performed or occur, after the contract has been formed, before the contract becomes effective." Morgan v. City of Rolla, 947 S.W.2d 837, 840 (Mo. Ct. App. 1997) (quoting Gillis v. New Horizon Dev. Co., 664 S.W.2d 578, 580 (Mo. Ct. App. 1983)) (internal marks omitted). "A condition which involves anything in the nature of consideration is, in general, a condition precedent." Globe Am. Corp. v. Miller Hatcheries, Inc., 110 S.W.2d 393, 396 (Mo. Ct. App. 1937) (quotation omitted); accord Survivors Benefit Ins. Co. v. Farmer, 514 S.W.2d 565, 572 (Mo. 1974) (explaining premium payments are "usually . . . a condition precedent to the liability of the insurer").

Both the text and nature of the proviso "no insurance applied for will become effective unless [American General] issues a policy from the application for this policy, the first premium is paid, and any other terms and conditions of the policy are met" indicates the parties intended the payment provision to be a condition precedent to the contract becoming effective. See Wolfson v. Bernstein, 955 S.W.2d 814, 815-16 (Mo. Ct. App. 1997) (deciding a provision stating "any policy issued as a result of this application shall not become effective prior to payment of the first premium" made "payment of the first premium . . . a condition precedent to the effectiveness of the policy"); Quirk v. Columbian Nat'l Life Ins. Co., 207 S.W.2d 551, 555 (Mo. Ct. App. 1947) (determining an agreement "in the application that the insurance contract shall not take effect until the payment of the first premium" is a valid and enforceable condition precedent).

Although American General may have issued and delivered Dallas's policy, "[u]nder the specific provisions of this contract, the insurance was not to take effect

immediately unless the above-noted conditions precedent had been performed and taken place." N.Y. Life Ins. Co. v. McCreary, 60 F.2d 355, 357 (8th Cir. 1932). The payment provision states the policy will not become effective unless the conditions are met, not, as Dallas contends, the policy was effective immediately subject to cancellation upon notice to Dallas that she failed to pay her premiums. See Bearup v. Equitable Life Assur. Soc. of U.S., 172 S.W.2d 942, 945 (Mo. 1943) (concluding a condition was a condition precedent to contract formation because there was "no agreement that insurance was in force subject to rejection" or rescission).

Under Missouri law and the terms of the policy, Dallas's payment of the first premium was a condition precedent to the policy becoming effective. As Dallas conceded at oral argument, when payment "is a condition precedent and the payment is not made, then there is no policy." See Wareham v. Am. Family Life Ins. Co., 922 S.W.2d 97, 100 (Mo. Ct. App. 1996) ("No contract existed because the decedent failed to comply with all conditions precedent to the contract's formation."). Because the policy was not in force when Walker died, the district court did not err in concluding "no benefits [were] due under the terms of the policy." See Rhodus v. Kan. City Life Ins. Co., 137 S.W. 907, 909 (Mo. Ct. App. 1911) (explaining "there can be no valid insurance upon the life of one already dead at the time when the contract becomes complete") (quotation omitted).

## C.    Waiver and Estoppel

Dallas maintains that even if payment were a condition precedent to the policy becoming effective, American General "waived payment, or is estopped from asserting non-payment, in this case." Under Missouri law,

> estoppel requires "(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act." Mississippi-Fox Drainage

Dist. v. Plenge, 735 S.W.2d 748, 754 (Mo. Ct. App. 1987). Waiver is founded upon "the intentional relinquishment of a known right." If waiver is "implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right." Shapiro v. Shapiro, 701 S.W.2d 205, 206 (Mo. Ct. App. 1985).

Brown v. State Farm Mut. Auto. Ins. Co., 776 S.W.2d 384, 386-87 (Mo. 1989) (en banc). "While waiver and estoppel may be applied to the provisions of existing insurance contracts, these doctrines cannot be used to create a contract for insurance where none exists." Wareham, 922 S.W.2d at 100; accord Fernan, 162 S.W.2d at 286 ("If there was no contract when [the purported insured] died, nothing that [the insurer] did subsequent to his death could aid plaintiff's case in any way, because one cannot create a contract by waiver or estoppel.").

The district court determined Wareham precluded Dallas's estoppel and waiver claims because "the life insurance policy in this case never came into effect." Dallas claims this was error. Assuming, without deciding, that Dallas's nebulous estoppel and waiver claims survive the proposition stated in Wareham, Dallas still falls short of presenting a submissible case of estoppel or waiver under Missouri law.

Dallas argues that by using the ABC system and providing her with an undefined "PNO lapse date,"[4] American General has "waive[d] any argument that the premium had to be paid by the issue date." Dallas asserts American General essentially is selling policies on credit—that is, the policy is issued and effective immediately on the insured's promise to pay the premiums later—which Dallas contends she tendered in August.

_____

[4]The term "PNO lapse date" is neither defined nor referenced in Dallas's policy or application. Dallas and American General offer differing interpretations of the term as used in American General's internal records, but neither explains the acronym "PNO."

Although Dallas is correct that an insurer can waive a payment condition, see Bearup, 172 S.W.2d at 946; accord Person v. Aetna Life Ins. Co., 32 F.2d 459, 461 (8th Cir. 1929) ("'It is a rule generally adopted in the United States courts that, if a policy of life insurance provides that it is not to take effect until the first premium is paid, recovery cannot be had upon the policy, when it appears that the premium was unpaid at the date of the death of the insured, unless it appears that payment was waived by action of the insuring company.'" (quoting Aetna Life Ins. Co. v. Johnson, 13 F.2d 824, 825 (8th Cir. 1926))), or issue a policy on credit, see Chailland v. M.F.A. Mut. Ins. Co., 375 S.W.2d 78, 81 (Mo. 1964) (en banc), Dallas has failed to adduce sufficient evidence to enable a reasonable jury to find American General waived the payment provision or issued Dallas's policy on credit.

Dallas's policy stated the initial premium was due June 28, 2010, with no grace period. The ABC agreement, which explicitly did not alter the policy terms, anticipated an electronic payment on June 28, 2010, and indicated the policy would not be effective unless American General received that first payment. Shortly after June 28, American General attempted to draw the initial premium payment from Dallas's account as authorized by the ABC agreement, but the transaction failed because Dallas had provided incorrect account information. On July 4, 2010, American General provided notice of the failed payment and urged the named account holder to act to "save" the policy.

Dallas did not respond until after Walker's death. Dallas has not adduced any record evidence "clearly and unequivocally," Brown, 776 S.W.2d at 387, or even inferentially, showing American General intended to relinquish its right to receive actual payment before the policy became effective or otherwise forfeited its payment rights. See Johnson v. Travelers Ins. Co., 194 S.W.2d 938, 941 (Mo. Ct. App. 1946) ("[P]remiums are the life blood of insurance, . . . and it is not to be presumed that the insurer intends to carry insurance over any period without receiving payment therefor.") (quotation omitted).

Dallas's near total reliance on the PNO lapse date as evidence of waiver and estoppel is misplaced. The PNO lapse date, which is set at approximately sixty days from the date of an unpaid premium payment, is not defined or referenced in the application or the policy itself. American General describes the date as "an internal, administrative deadline, not a Policy deadline." Dallas, who became aware of the date by virtue of being an American General agent and having access to American General's computer system, asserts the date gave her an additional sixty days to tender payment. Dallas's assertion is based on the use of the term in two internal American General documents available only to American General's employees and agents.

Dallas's contention that the PNO lapse date waived the policy's payment provisions is unpersuasive. "'To rise to the level of a waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible.'" Osborn v. Prudential Ins. Co. of Am., 453 F.3d 1077, 1079 (8th Cir. 2006) (applying Missouri law) (quoting Acetylene Gas Co. v. Oliver, 939 S.W.2d 404, 409 (Mo. Ct. App. 1996)). No reasonable jury could find the two computer internal references to the PNO lapse date—accessible to Dallas only in her capacity as an American General agent—unequivocally indicated American General intended to relinquish its express right to payment of the initial premium before the policy became effective.[5]

## III. CONCLUSION
We affirm.

_____

_____

[5]Dallas appears to assume any payment she made would have made the policy effective retroactively, but she produced no evidence to that effect. The only record evidence on this point indicated a late payment received before the PNO lapse date would make the policy effective as of the date of payment—not retroactively. Dallas sent payment two weeks after Walker died.